## BANKERS' LIFE INSURANCE COMPANY OF THE CITY OF NEW YORK *vs.* ROBERT MILLER.

*Life Insurance—Material Misrepresentations—Instructions to Jury.*

A misrepresentation as to a subject material to the risk made by an applicant for life insurance, in reliance upon which the policy is issued, avoids the insurance, although the applicant made such representation in good faith or through mistake, because in such case the insurer is induced to take a different risk from that which the representation led him to suppose he was assuming.

When it is manifest that certain representations made by an applicant for life insurance were material to the risk the jury should be instructed to that effect, and the question of the materiality *vel non* of the representation should not be left to their finding.

A woman who was suffering from cancer of the uterus and upon whom surgical operation therefor had been performed, represented to a life insurance company that she was in good health and had never had cancer or uterine disease of any kind. The policy was issued and the woman died within six months thereafter. In an action against the insurer, *held*, that the jury should have been instructed that these representations were material to the risk and being untrue according to the uncontradicted evidence preclude a recovery on the policy, whether the woman knew that they were untrue or not.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Charles W. Heuisler* and *E. Allan Sauerwein, Jr.* (with whom was *Arthur L. Sherer* on the brief), for the appellant.

*Thomas C. Ruddell* and *Martin G. Kenney*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Common Pleas of Baltimore City in favor of the appellee upon a policy of life insurance issued by the appellant. The policy was issued on December the sixth, 1901, and it insured for three thousand dollars the life of the appellee's wife, Kate Miller, who died within six months thereafter.

The appellee having brought suit upon the policy the appellant filed the general issue pleas and also a special plea asserting that Mrs. Miller had induced it to issue the policy by falsely and fraudulently representing at the time of her application therefor that she was in good health and was not afflicted with any disease or disorder tending to shorten life, when she was in fact not then, nor when the policy was issued in good health, but was at those times suffering from and afflicted with cancer of the uterus a disease which does tend to shorten life. The quarterly premiums which fell due during the lifetime of the insured appear to have been paid and after her death due proof of that fact was furnished to the appellant. The sole defense made to the suit was that the insured had induced the appellant to issue the policy to her by false representations material to the risk.

It appears from the record that after Mrs. Miller had, at the suggestion of one of the appellants' solicitors, sent in a written application for the policy, the appellant sent Dr. Craighill its medical examiner, to make an examination of her physical condition. The doctor went to her residence for that purpose taking with him a printed series of interrogatories which he put to her and wrote down her answers in detail in her presence. She then signed the paper containing the questions and answers and the doctor attested her signature and also appended over his own signature a certificate of having made the examination on December 4th, 1901, and a recommendation of the applicant for insurance. Two days after the receipt by the appellant of this report and recommendation it issued the policy.

This report of the physician's examination of Mrs. Miller

was put in evidence in the case and a copy of it appears in the record.   It shows that she was asked whether she had ever had cancer or tumors or ulcers of any kind, or any menstrual disorder or symptoms of uterine or ovarian disease, also whether she had ever been under treatment at any asylum, cure or sanitarium.   To each of these questions she answered in the negative.   She also stated in response to appropriate interrogatories that Dr. F. G. Moyer was the last physician whom she had consulted and that the consultation had been during child birth.   One of her answers stated that her youngest child was then eight years old.   Another answer stated that she was in good health as far as she knew and still another answer stated that her mother was then seventy-five years old and in good health.

Dr. F. G. Moyer was called for the defense and testified that he had attended Mrs. Miller as a physician for seventeen or eighteen years prior to her death, that he had performed a surgical operation on her at her residence on October 24th, 1900, to remove a malignant growth from her uterus that was jeopardizing her life, and that she was then suffering from a cancer at the neck of the womb and had been having very severe hemorrhages from that cause, although he did not think that she knew the true nature of her disease, and that in December of the same year it became necessary to perform a second operation upon her.   He further testified that he explained to her the necessity for the second operation and advised her to go to the City Hospital to have it performed as it could be done better there, that she went to the hospital where the operation was performed in his presence by Dr. Thomas Opie.   He further testified that he continued to attend her for sometime after the second operation and that she continued to have hemorrhages from time to time until her death which was caused by the cancer.   He also said that the last time he had attended her for child birth was seven or eight years before her death.

Dr. Thomas Opie was then called as a witness for the defense.   After stating that he had been Dean of the College of

Physicians and Surgeons for thirty-two years, he said that he had performed the operation for *carcinoma* of the *cervix uteri* on Mrs. Miller in December 1900. He produced written notes of the operation which he said had been dictated at the time by him to his assistant by whom they were taken down as dictated. On these notes under the head of "Family History" it is stated that the patient's mother died of *carcinoma* of the womb. It is also stated on the notes "Patient states that she has noticed the above symptoms (excessive hemorrhage, constipation, &c.), for past year or eighteen months."

Dr. Jerome T. Atkinson of New York, the Medical Director of the appellant, testified on its behalf that no policy of insurance is ever issued by it except upon an application and a medical examination of the applicant approved by him, that he had seen and considered the application and medical examiner's report in the case of Mrs. Miller and having come to the conclusion therefrom that the applicant was insurable he stamped his approval on it which was equivalent to a permission to the policy department of the appellant to issue the policy thereon and that the policy was in fact so issued. Robert F. Moore, the General Manager of the appellant, also identified the application of Mrs. Miller and the examiner's report thereon as the papers upon which the policy was issued. The testimony of these physicians and of Robert F. Moore is entirely uncontradicted.

Two exceptions appear in the record but the appellant only insisted at the hearing in this Court upon the one taken to the Court's action upon the prayers.

At the close of the evidence the plaintiff and defendant each offered three prayers. The Court granted all of the plaintiff's prayers and rejected the defendant's first and second prayers and granted its third one after having first modified it.

The plaintiff's first prayer instructs the jury to render a verdict in his favor if they find from the evidence the issue of the policy, the death of the insured and the furnishing of due proofs thereof to the defendant, unless they find that the insured induced the defendant to issue the policy by fraud or

misrepresentation that was material to the risk ; and his second prayer asserts that the burden of proof of the fraud or misrepresentation is upon the defendant.     His third prayer correctly states the measure of damages in the event of a verdict in his favor.

The defendant's first prayer asks the Court to take the case from the jury for want of legally sufficient evidence to sustain the plaintiff's case and its second prayer asserts that if the jury find that the insured made false representations as to her health when applying for the policy in denying that she had the disease or the symptoms thereof which resulted in her death then the representations were as to matters material to the risk and the verdict must be for the defendant.  The third prayer embodies the proposition that if the jury find that the insured in her application for the policy made untrue or fraudulent statements material to the risk their verdict must be for the defendant unless they further find that the defendant knew the truth in regard to such statements when it issued the policy.   The Court modified this prayer so as to require the jury to find that the statements made by the insured for the purpose of procuring the policy were *known to her to be untrue or fraudulent* and that they were material to the risk in order to find for the defendant.

The representations made by Mrs. Miller in the present case were not warranties.   They were not such on their face nor were they made part of the policy by any reference to them contained in it.   They were simply representations collateral to the contract and the law does not require them to have been strictly and technically accurate but it does require them to have been essentially and substantially true in order to support the policy issued in reliance upon them if they relate to matters material to the risk.   The materiality of such representations is ordinarily a question for the jury but if it be palpable and manifest from uncontradicted testimony or from the nature of the representations themselves that they are material to the risk the Court would be warranted in so instructing the jury.   *Mut. Ins. Co.* v. *Deale*, 18 Md. 26; *Fidel*

*ity Ins. Co.* v. *Ficklin,* 74 Md. 172; *Lutz* v. *Mut. Life Ins. Co.,* 186 Pa. 527; *Campbell* v. *N. E. Mut. Life Ins. Co.,* 98 Mass. 401; *Philips on Insurance,* sec. 342. In view of the uncontradicted evidence to which we have referred we think that in the present case the question of the materiality of the representations was erroneously submitted to the jury by the Court below in granting the plaintiff's first prayer and the unmodified part of the defendant's third prayer.

The cardinal question raised by the action of the Court on the prayers is whether it was proper to require the jury, in addition to finding the fact of the representations alleged to have been made by Mrs. Miller and their materiality to the risk, to go further and find that the representations were *known to her to be untrue and fraudulent,* when she made them, in order to find a verdict for the defendant. The learned Judge below required the jury to so find by the rejection of the defendant's third prayer as offered and modifying it as he did before granting it, and he in effect made the same ruling in granting the plaintiff's first prayer. These rulings on the prayers were in our opinion erroneous.

The better authorities agree that a material misrepresentation made by an applicant for life insurance in reliance on which a policy is issued to him avoids the policy whether it be made intentionally or through mistake and in good faith. This doctrine rests upon the fact that even if the untrue material representation be innocently made it deceives the insurer who relies upon it and thus the risk which he actually assumes is different from the one which the action of the applicant in making the representation led him to suppose he was assuming. *May on Insurance,* sec. 181; *Bliss on Life Insurance,* sec. 48, 49; *Phillips on Insurance,* sec. 537; *Carter* v. *Boehm,* 3 Burrows, 1909; *Campbell* v. *N. E. Mut. Life Ins. Co.,* 98 Mass. 381; *Am. & Eng. Encycl. of Law,* vol. 16, 2 ed., p. 933.

The uncontradicted evidence in this case to which we have referred establishes the fact that Mrs. Miller when she was an applicant for the policy sued on made untrue representations to the defendant in reference to the state of her health which

were not only material but were vital to the risk, and that the policy was issued to her in reliance upon those representations. It is difficult to understand how she could have made some of those representations in ignorance of their untruth. But be that as it may it is irrational to suppose that the appellant would have issued the policy if it had been apprised of the true state of the facts, to which the representations related. The same effect was produced on the appellant as if the representations had been fraudulent for it was induced by them to enter into a risk which it would have rejected if it had been properly informed and it ought not to be held to a risk which it assumed in that manner.

The judgment appealed from will be reversed because of the erroneous action of the Court below upon the prayers, and in view of the uncontradicted evidence as to the fact of the untrue representations made by the applicant for the insurance and the evident materiality of the subject to which they relate we think that no recovery ought to be had upon the policy sued on and we will not send the case back for a new trial.

> *Judgment reversed with costs without*
> *a new trial.*

(Decided November 18th, 1904 )