# THE MUTUAL LIFE INSURANCE COMPANY *vs.* THOMAS M. MULLAN ET AL., EXRS.

*Life Insurance—Policy Issued by Foreign Company in this State Governed by Code, Art. 23, sec. 196, Relating to Misrepresentation in Application—Untrue Statements by Insured Held to be Material to the Risk and to Avoid the Policy—Burden of Proof.*

Code, Art. 23, sec. 196, provides that whenever the application for a policy of life insurance, contains a warranty of the truth of the answers, no misrepresentations or untrue statement in such application, made in good faith, shall effect a forfeiture, or be a defense in a suit on the policy, unless such misrepresentations or untrue statements relate to some matter material to the risk. *Held*, that this statute is applicable to a contract of insurance made in this State by a corporation of the State of New York, although the contract provides that it shall be subject to the charter of the company and the laws of New York.

*Held*, further, that the statute is applicable to a contract of insurance made by a mutual insurance company which is not a benefit assessment association.

In an action on a policy of life insurance, where the defendant alleged the policy to be void on account of untrue statements made in the application, the burden of proof is upon the defendant to show that the statements made were untrue or were not made in good faith, and related to matters material to the risk, under Code, Art. 23, sec. 196.

A policy of life insurance was issued in November, and the insured died in the following April from an abscess of the rectum and tuberculosis. In his application, the insured stated that he had been last treated by a physician four years previously, for broken ribs, and that he had had no other injury or illness; that as to the use of liquor, his habit was, and had been, one glass of beer a day, on an average, and that he had never taken any special treatment for alcoholism. In an action on the policy, defendant's evidence showed that after the time referred to in the application as the last treatment of the insured by a physician, he had been treated by two or three other physicians, besides the one named; that he had suffered from *cirrhosis* of the liver, caused by excessive drinking of spirituous liquors, which had predisposed him to the rectal abscess and tuberculosis; that he had received an injury to one eye, which resulted in its removal; that he was a hard drinker and was frequently intoxicated, and that, five months before his application, he had been confined and treated for an attack of *delirium tremens*. *Held*, that these untrue statements were material to the risk as matter of law; that as the applicant knew they were false, they were

not made in good faith, and that since the fact that they were untrue was established by uncontradicted evidence it was error to instruct the jury that the plaintff might recover if they found that the untrue statements related to matters not material to the risk and were made in good faith.

In an action on a policy of life insurance governed by Code, Art. 23, sec. 196, which enacts that untrue statements made in the application in good faith, shall not be a defense unless the misrepresentations related to a matter material to the risk, it is proper to instruct the jury that in considering the question of materiality of the answers in the application, they are to consider not what disease, if any, caused the death of the insured, but the effect that said answers might have had in procuring the issue of the policy, and if the jury find that any untrue answer materially affected the risk, then regardless of the causes that finally produced the death of the insured, their verdict must be for the defendant.

*Decided March 31st, 1908.*

Appeal from the Circuit Court for Allegany County (KEEDY, J.)

*Plaintiff's 1st Prayer.*—If the jury find that the plaintiffs are the executors of the late Catherine T. Mullan and that the defendant executed the policy of insurance offered in evidence and delivered the same to John Joseph Mullan in his lifetime, and that the said John Joseph Mullan paid the defendant all the premiums payable thereon up to the time of his death, and complied with all the undertakings and stipulations to be performed on his part, in said policy, and that on the 19th day of April, 1906, he died and that the said Catharine T. Mullan, his mother and the beneficiary named in said policy of insurance exhibited and delivered to the defendant the proofs of death and justness of claim offered in evidence on or about the 2nd day of May, 1906, and before the commencement of this suit, and that the said Catharine T. Mullan departed this life on or about the 5th day of September, 1906, leaving a last will which was duly admitted to probate in the Orphans' Court of Allegany County, wherein the plaintiffs were appointed executors of said Catharine T. Mullan and gave bond and became such executors before this suit, then the plaintiffs

are entitled to recover in this action, unless the jury shall find from the evidence that the application for the policy on the part of said John Joseph Mullan contained some misrepresentation or untrue statement of fact not made in good faith by said applicant; or unless the jury shall find said application contained some misrepresentation or untrue statement on some matter material to the risk.  (*Granted as modified.*)

*Plaintiff's 2nd Prayer.*—Even if the jury find that in the application of John Joseph Mullan, in answer to the questions, "Give name and address of physician last consulted," it is stated as follows: "Dr. Brown, of Elkins, W. Va.," "When was he consulted," "Four years ago," and that said answers of applicant were untrue in fact, still the plaintiffs are not debarred by the same from recovering in this case, if the jury shall further find that said representations and statements of the applicant were made in good faith and were not material to the risk undertaken by the defendant in insuring the life of the said John Joseph Mullan.  (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Randolph Barton, Jr.,* and *Irvine R. Dickey,* for the appellant.

*Benjamin A. Richmond* (with whom was *Finley C. Hendrickson* on the brief), for the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

This case was submitted to the jury in the Court below upon certain granted prayers which are set out in the record, and a verdict for $1,050 returned for the plaintiffs, upon which judgment was entered.  The insurance company brings this appeal alleging as its chief contention, error on the part of the lower Court in granting the first and second prayers of the plaintiffs, and in refusing to grant certain prayers offered on behalf of the defendant company.

Several important questions concerning the law of life insur-

ance are involved in the appeal which we will now proceed to consider. Before the Act of 1894, chapter 662, it was always a matter of great importance in considering a case like this to determine at the outset whether the answers and statements of the applicant as contained in his application for insurance, were warranties or mere representations. If the former, the policy was avoided, unless such statements and answers were literally true, whether they related to matters material to the risk or not. *Monahan* v. *Ins. Co.*, 103 Md. 156; *Md. Casualty Co.* v. *Gehrman*, 96 Md. 648; *Bankers Life Ins. Co.* v. *Miller*, 100 Md. 1.

If the latter the policy was not avoided, unless the answers and statements were false in relation to some matters material to the risk. *Bankers Life Ins. Co.* v. *Miller, supra.*

By the aid of warranties, and the innocent mistakes of the insured, it often happened that the insurer was able to escape liability on a ground of the purest technicality. For the purpose of relaxing the harsh rule of the common law which required warranties to be literally true without regard to their materiality to the risk, the Act of 1894, ch. 662, was passed. That Act, which is a literal copy of the Pennsylvania statute, and similar to the statutes of some other States on the same subject, is as follows: "Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture, or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." Code 1904, Art. 23, sec. 196.

In construing the Pennsylvania statute which as we have said is identical with our own, the Supreme Court of that State says: "The meaning of this language is perfectly plain. A misrepresentation or untrue statement in an application, if made in good faith shall not void the policy, unless it relate to some matter material to the risk. If the matter is not

material to the risk, and the statement is made in good faith, although it is untrue, it shall not avoid the policy." *March* v. *Life In. Co.*, 186 Pa. St. 641.

In other words the statute was passed to prevent the defeat of the ends of justice by mere technicality. It is remedial in character and should be given such liberal and reasonable interpretation as will insure judicial investigation in the ordinary way of the question whether any particular statement in the application was untrue, and if untrue, whether it was material to the risk. If the statement is found to be untrue and material, the penalty of the forfeiture of the policy will usually follow as of course, whether the answer be made in good faith or in bad faith. *Penn Mutual* v. *Savs. Bank*, 38 L. R. A. 56.

As the application in this case contains a clause of warranty of the truth of the answers therein contained, and as the application is referred to in and made a part of the policy the statute by its very terms is applicable, unless other circumstances render it inapplicable. And the appellant contends that this Act is not applicable to the case at bar for two reasons:

*First*, Because the contract of insurance expressly provides that it shall be subject to the charter of the company, and of the laws of the State of New York, and as there is no evidence of a similar statute to our own in force in that State, this Court will presume that the common law prevails there, and that consequently this contract must be construed according to the rules of the common law. Citing *Ficklin's case*, 74 Md. 172.

*Second*, Because as the defendant company is a mutual one, as is alleged, the contract of insurance must be construed in accordance with the laws of the State where the company was created, and agreeably to its charter, in order to preserve the scheme of mutuality as was done in *Brashears case*, 89 Md. 624.

In answer to the first reason assigned we refer to the case of *Keatly* v. *Travelers Ins. Co.*, 187 Pa. St. 197, where it was

attempted to evade the provisions of the Pennsylvania Act, by reciting in the policy that it should be construed by the laws of Connecticut. The Court in that case held that such an agreement was against public policy, and that the contract must be governed by the laws of Pennsylvania, where the contract was made. A similar rule was adopted in Massachusetts in the case of *Dolan* v. *Mutual Reserve,* 173 Mass. 197, the Court saying: "The contract was made in Massachusetts through its agent here, and the policy was delivered and paid for here. It is therefore governed by our laws." The same rule was applied in the *Fidelity Mutual Life* v. *Jeffords,* 53 L. R. A. 193, and in *Fletcher* v. *New York Life,* 13 Fed. R. 526.

In a suit in the United States Circuit Court, sixth circuit, on a policy of insurance issued by a Pennsylvania corporation to a person in Maryland, full effect is given to the Maryland statute. *Fidelity Mutual* v. *Miller,* 92 Fed. 63. See also *Equitable Ins. Co.* v. *Pettus,* 140 U. S. 226.

We think therefore, that while it is perfectly true that in the absence of proof to the contrary, the common law is presumed to be in full force, and to be the same as the common law of the *forum,* in all those States which were originally colonies of England (8 *Cyc.,* 387B); and although in *Ficklin's case, supra,* this Court gave the benefit of the remedial statute of Pennsylvania, before its adoption by the Legislature of this State, to one of our citizens suing in the Courts of this State upon a contract made here by a Pennsylvania corporation, yet we deem it against public policy to permit a contract of insurance made here since the passage of the Act of 1894 with a citizen of this State, to be governed by the harsh rules of the common law which by legal presumption merely, is supposed to obtain in the State of New York by whose laws it is sought to have this contract construed.

When a corporation undertakes to do business beyond the territorial limits of the State creating it, it does so merely by comity, and the State which it enters for the purpose of transacting business therein, has the power to require such corpor-

ation to carry on its business there subject to its statutes, and this Court will not allow the parties to such contracts as this, by any stipulations contained therein to contravene the salutary provisions of this statute intended for the protection of our own citizens against common law warranties.  *New York Life Ins. Co.* v. *Craven*, 178 U. S. 389 (44L. ed. 1116.)

In answer to the second reason assigned, we have only to say that in the *Brashears case (supra)* the insurer was the Royal Arcanum, a purely mutual benefit association, which is not controlled in this respect by the ordinary rules of life insurance; (*Penn Mutual* v. *Savings Bank*, 38 L. R. A. p. 58), and besides in this case, we have no knowledge that the appellant is in fact a mutual company, except the inference to be drawn from the single "Mutual" contained in its corporate name.  We think it is perfectly clear therefore, that as the first premium on the policy was paid in this State, by a citizen of this State, and the policy delivered here, that it is a Maryland contract and to be governed by Maryland laws.

The Act of 1894, ch. 662, being applicable to this case, as we think it clearly is, the burden of proving the untruth of the insured's statements and answers in his application, and also, if untrue, that they relate to some matters material to the risk, or that they were not made in good faith, was upon the defendant, if it relied upon fraud or misrepresentation on the part of the insured as a defense to the action.  *Brashears case*, 89 Md. 633; *May on Ins.*, sec. 183.

Ordinarily the question of the truth of the answers *vel non*, as well as the question of their materiality and good faith are to be submitted to the jury with proper instructions; 25 *Cyc.*, 950; *Lewis* v. *Metropolitan Co.*, 163 Mass. 118; but as the evidence in such cases is adduced as matter in avoidance of the inception of the contract, whenever any one of these facts is established by clear and uncontradicted evidence, the Court may, by the great weight of authority, so rule as a matter of law.  *Bankers Life Ins. Co.* v. *Miller*, 100 Md. 1; *Lutz* v.*Metropolitan Life Ins. Co.*, 186 Pa. St. 527.

Where a material false representation or breach of warranty

is shown by the uncontradicted evidence, and no waiver thereof by the insurer is proved, a non-suit should be granted, or a verdict directed for defendant.    25  *Cyc.*, 951.

The case now under consideration was instituted in the Circuit Court for Allegany County, and tried in that Court, in April, 1907.    The policy of insurance sued on, and also the application were in evidence at the trial, and both bore the date of November 20th, 1905.    Mullan, the insured, died on April 19th, 1906, just five months later.    A short time before his death, that is in January, 1906, he was suffering with an abscess of the rectum, for which he was operated upon on February 6th, 1906, at the hospital.    He was in the hospital two or three weeks.    Tuberculosis set in the last of March, of which he died April 19th, as above stated.

The company denied liability on the ground that Mullan. had made misrepresentations in his application, relating to matters material to the risk.

Catherine T. Mullan, the beneficiary named in the policy having died subsequently to the death of the insured; suit was brought by her executors who obtained a verdict and judgment as above recited.

The alleged misrepresentation upon which the defendant relies to defeat the action, are the following statements and answers in his application:—

1st.  That the physician last consulted by Mullan was Dr. Brown of Elkins, W. Va., who attended him four years previously, that the nature of his complaint was, "two ribs broken, the result of a fall," and further that he had had no other injury or illness of any kind, nor any remaining effects of any.

2nd.  That his habit as to the use of intoxicants was one glass of beer a day on an average, and that such had been his habit in the past.

3rd.  That he had never taken any special treatment for alcoholism.

The uncontradicted evidence shows that two or three other physicians attended Mullan subsequently to the time, as stated by him in his application, when he was treated by Dr. Brown.

One of these was Dr. Carder who testified that he treated Mullan two years previously for cirrhosis of the liver. Witness said Mullan was then in a very bad condition; his abdomen was sticking out prominently, so that he complained that he could not button his vest. His legs were swollen and he was all puffed up with dropsy caused by the trouble with his liver. Dr. Carder further states that he attributed Mullan's condition to his hard drinking. That Mullan said he had been a hard drinker, and he attributed the trouble with his liver to that cause. He further testified that cirrhosis of the liver tends to break down a man's physical condition, and to predispose him to other diseases. That this condition might tend to bring on a rectal abscess such as this man subsequently had, and also tubercular trouble of which he died. He thought the abscess in the rectum indicated tubercular trouble setting up.

Another physician who attended Mullan about the same time Dr. Carder treated him for cirrhosis of the liver, was Dr. Fechtig who treated Mullan for an injury to his eye necessitating its removal.

Dr. Fechtig says he observed Mullan's swollen abdomen; "the whole abdomen was sticking out," said the doctor. "Mullan had symptoms of a drinking man." He attributed his condition to the excessive use of whiskey; and said cirrhosis of the liver would produce a swelling of the abdomen.

Still another physician who treated Mullan a short time before he made out his application for the policy of insurance sued on, was Dr. Brace, the jail physician, who treated him from June 20th to 29th, 1905, for alcoholism or insanity. Mullan was brought to the jail suffering from delirium tremens, and remained there ten days under Dr. Brace's care. After Mullan left the jail this physician continued to treat him for the effects of drink until July 12th, 1905. He gave him medicine to build up his nervous system. Dr. Carder also testified that Mullan consulted him professionally "every couple of weeks sometimes twice a week clear up until he died." And that he at times complained of having malaria.

The testimony of Mullan's employer was that he had seen Mullan intoxicated quite often, sometimes every week or couple of weeks, then again not for a year. In January, 1905, he discharged Mullan because of his being drunk on his job, and Mullan never worked for him again after that. Mullan's neighbor testified that Mullan was drinking most all the time when he was not working. After he quit work witness would see him "intoxicated and drunk."

By referring to the statements and answers of the insured in his application, as set out above, and comparing them with the aforegoing summary of the testimony of the witnesses, it will be seen that there are very apparent and wholly irreconcilable discrepancies between them.

If these witnesses are to be believed Mullan drank very much more than one glass of beer a day on an average. He was specially treated for acute alcoholism, and he consulted two or three other physicians than Dr. Brown, for serious disorders.

In the light of this clear, convincing and uncontradicted evidence, the statements and answers in his application were manifestly untrue. If untrue, did these untrue statements and answers relate to matter material to the risk?

As to the cause and character of the disorder called cirrhosis of the liver, resort has been had to some reference works on the subject. Dr. William Osler in his treatise on the "Principles and Practice of Medicine," says: "Alcohol is the chief cause of cirrhosis of the liver."

In a "Dictionary of Medicine" consulted, it is stated that, "the most common cause of cirrhosis of the liver is undoubtedly due to the abuse of spirituous liquors."

In an article on the subject contained in the "American Encyclopedia," it is stated that, "in chronic alcohol poisoning nearly all the tissues of the body are affected. This leads to a disease of the liver, cirrhosis."

In determining the question of materiality, it may be well to inquire what matters are deemed in law material to the risk. In 25 *Cyc.*, 816, it is said that "a false statement as to

whether the applicant has consulted or been treated by a physician, is material to the risk," and this seems to be the general rule, except in cases where the treatment is for a trivial ailment. *Dulany's case*, 106 Md. 17; *Fidelity Mutual* v. *Miller*, 92 Fed. R. 63.

In another excellent authority it is stated that as a general rule matters are material when knowledge of the truth of the facts misrepresented might reasonably influence the company in determining whether or not to accept the risk, and what premium to charge. *May on Ins.*, sec. 184.

The Court below by granting the defendant's 12th prayer informed the jury, "that in considering the question of materiality of any of the answers in the application, they were to consider, not what disease, if any, caused the death of the insured, but the effect that said answers might have had in procuring the issuance of the policy by the defendant, and if the jury should find that any answer was incorrectly given by the insured which materially affected the risk assumed by the defendant in issuing the policy, then regardless of the causes that finally produced the death of the insured, under the pleadings in the case the verdict must be for the defendant."

As there is no appeal from the Court's ruling in regard to this prayer, it is not before us for review, and becomes the law of this case. We deem it only proper to say, however, that we consider the prayer substantially correct. Leaving out of consideration the fact that Mullan was treated for an injury to his eye, necessitating its removal, it was certainly material to the risk that the insured consulted at least two physicians other than the one named by him, one of whom treated him for cirrhosis of the liver, which tends to break down a man's physical condition, and to predispose him to other diseases, and which may conduce to or bring on a rectal abscess such as this man had, and also tubercular trouble of which he died; and another of whom treated him for alcoholism or delirium tremens within five months before he made his application for the policy of insurance sued on in this case.

These ailments could not be regarded as trivial in their

nature.    The fact that Mullan drank intoxicating liquors very much in excess of "one glass of beer a day on an average," was also material to the risk as a matter of law, and the Court below by granting the defendant's sixth prayer properly so instructed the jury.

If the misstatements of the insured relate to matters material to the risk it would ordinarily make little difference whether these misstatements were made in good faith or in bad faith, though there may be cases in which the misstatements are material, and yet open to the inquiry of their being made *bona fide* or not.    At any rate in this case it would seem impossible for the insured not to have known that his statements were untrue.    If known to him to be untrue they were not made in good faith.    In this connection the language of the late Chief Judge of this Court in *Monahan's case*, 103 Md. 156, seems especially apposite:

"Whilst a misrepresentation of facts," says he, "which are material to the risk and which from their very nature, must have been known, or which may reasonably be presumed to have been known by the applicant but not by the insurer, will render a policy issued upon the faith of their verity, invalid; because the insurer has been induced to write a liability which he would not have assumed if the truth had been frankly disclosed to it," yet etc.    The Court then proceeds to say that a different rule prevails where the facts misrepresented are peculiarly within the knowledge of the defendant, which latter observation has no application to this case.

As we have already said the fact that the applicant used intoxicants very much in excess of one glass of beer a day on an average, was palpably material to the risk.    The appellees contend, however, that there was some evidence in the case from which the jury might find the statement of the insured in this respect to be true.    The testimony to which they refer is that of Mullan's employer, and that of Dr. Carder, both of whom in their testimony used the expression in speaking of Mullen's habits, "A glass of beer a day."    The former was the first witness for the defendant, and was not pretending to

speak of his own knowledge.    No doubt he gave utterance to
the expression because he had heard it used at the trial.    It
was contained in the application produced in evidence on the
part of the plaintiffs for the purpose of proving the contract,
but it was not evidence for any other purpose.    If the
expression used by the witness was evidence at all, it was a
mere scintilla; and taken in connection with all the other evi-
dence of the same witness on the same subject was so light
and inconclusive that no rational mind could infer from it the
fact sought by the plaintiffs to be established.

The use of the same expression by Dr. Carder was merely
in repeating what Mullan had said to him some years pre-
viously when he was treating Mullan for cirrhosis of the liver.
It was Mullan's mere declaration made at the same time that
he was being treated for a disease of the liver brought on by
his acknowledged hard drinking and taken in the connection
in which it was used, it had no probative force whatever.
Neither separately nor together were these mere expressions
legally sufficient to justify submitting the case to the jury
upon the question of Mullan's habit as to the use of intoxi-
cants in the face of the clear, convincing and uncontradicted
evidence of the same witness on the same subject.

In the case of *Bankers' Life Ins. Co.* v. *Miller, supra*, this
Court speaking through JUDGE SCHMUCKER says: "In view of
the uncontradicted evidence as to the fact of the untrue rep-
resentations made by the applicant for the insurance, and the
evident materiality of the subject to which they relate, we
think that no recovery ought to be had upon the policy sued
on."    See also *Rainger* v. *Boston Mutual*, 176 Mass. 109;
25 *Cyc.*, 951.

The plaintiffs in this case have offered no evidence what-
ever to contradict the clear and satisfactory evidence of the
defendant's witnesses as to the falsity of Mullan's statements
in his application in regard to several matters obviously
material to the risk, and which from their nature must have
been known to the applicant, but which cannot fairly be
presumed to have been known to the insurer or waived by it,

we think therefore the lower Court erred in granting the plaintiffs' first and second prayers which submitted these qnestions to the jury.    *Lutz.* v. *Ins. Co.*, 186 Pa. 527; *March* v. *Life Ins. Co.*, 186 Pa. St. 629–642.

What we have already said renders it unnecessary to consider separately all the rejected prayers offered by the defendant.    Most of these ignored the applicability of the Act of 1894, chapter 662, and were therefore properly rejected.

But for error in granting the first and second prayers of the plaintiffs, the judgment will be reversed, and as we think from the whole case that the plaintiffs are not entitled to recover, we shall not award a new trial.

*Judgment reversed without a new trial.*