MARY B. LOVING, Administratrix,

*vs.*

MUTUAL LIFE INSURANCE COMPANY.

*Life Insurance—False Statements by Insured—Materiality and Effect.*

That the applicant for life insurance made false statements of a material character, in reliance on which a policy was issued, constitutes a defense to an action on the policy, regardless of whether he made them in good faith.　pp. 181, 184, 186

In the case of a defense to an action on a life insurance policy, based on a false statement by the insured involving concealment of the fact that he had been treated for tuberculosis, the issue is, not whether he actually had the disease, but whether he concealed from the insurer, knowingly or inadvertently, facts known to him of such probative force or value that, in all reasonable probability, the insurer would have accepted them as sufficient proof that he had been afflicted with it.
p. 180

Where the falsity and materiality of the representations made by the insured are shown by clear, convincing, and uncontradicted evidence, the court, in an action on the policy, may so rule as a matter of law.　pp. 179, 180

That an applicant for life insurance stated that he had never had any illness or disease other than minor complaints, that he had been treated within five years by but a single physician, whose name he gave, and that he had never been under treatment in any hospital or sanitarium, involved material misstatements, when he had in fact had pulmonary tuberculosis, had within five years been treated by two other physicians, and had been for over a year under treatment in a sanitarium for that disease.　p. 179

On an issue as to false representations by an applicant for life insurance, involving the concealment of the fact that he had been treated for tuberculosis, evidence that the insured

might possibly have lived for a period of normal duration although he had such disease, and that before his last illness he was apparently in good health, was irrelevant.          p. 181

That the records of a "medical information bureau," an organization maintained to afford to insurance companies information relating to persons applying for insurance to the companies served by the bureau, showed that "Robert A. Loving" had pneumonia in 1914, did not charge a company, to which he applied for insurance five years later, under the name of "Arthur Loving," with knowledge of the falsity of a statement then made by him that he had never had any but minor diseases.                                    p. 182

On an issue as to false representations by an applicant for life insurance, involving the concealment of the fact that he had been treated for tuberculosis, self-serving declarations by the insured, that the insurer's agent was informed by him of the falsity of the statements in his application, are inadmissible.                                    pp. 183, 184

The declaration of an agent, to be binding upon the principal, must at least have been made during the agency, and pending the transaction to which it relates.          p. 185

The beneficiary under an insurance policy cannot avoid the effect of a material misstatement made in the application for insurance, by showing that the insurer's agent knew and approved of the misstatement, this involving a fraud upon the insurer, and an agent's knowledge not being imputable to the principal in favor of a third person who knows that the agent will not advise the principal.          pp. 185, 186

*Decided January 13th, 1922.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

Action by Mary B. Loving, administratrix of the estate of Arthur Loving, otherwise known as Robert A. Loving, against the Mutual Life Insurance Company of New York. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Willis R. Jones* and *Edward D. Martin,* with whom were *Albert S. J. Owens* and *Briscoe, Jones & Martin* on the brief, for the appellant.

*Randolph Barton, Jr.,* and *Forrest Bramble,* with whom were *Barton, Wilmer & Barton* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The Mutual Life Insurance Company of New York, on September 9, 1919, issued to Arthur Loving a life insurance policy providing for the payment of ten thousand dollars to his estate in the event of his death from natural causes, and of double that amount if the insured died as a result of bodily injuries through external violent and accidental means within sixty days from the injury. Attached to the policy, as a part of the contract, was the application made by the insured, which contained these provisions: "All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are true, and are offered to the company, as an inducement to issue the proposed policy" * * * and "I agree that no agent or other person except the president, vice-president, a second vice-president, a secretary or the treasurer of the company has power on behalf of the company to make, modify or discharge any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the company's rights or requirements, or to bind the company by making any promise respecting any benefits under any policy issued hereunder or by accepting any representation or information not contained in this application." In the statements made to the medical examiner, the insured said that he was in good health, that he had never raised or spat blood, that he had never been under treatment at any "asylum, cure, hospital or sanitarium," that he had never

suffered from any illness, injury or disease other than "minor complaints."

About May 22nd, 1920, Loving accidentally ran into an open door, striking it with his breast with sufficient force to throw him to the floor. After recovering from the immediate effects of the blow, he went to his house, where he had a profuse hemorrhage and a physician was called, but the injured man failed to improve, and on May 29th died from what was said to be traumatic pneumonia. Letters of administration were taken out on his estate by the appellant in this case, and she demanded of the appellee payment of the amount of insurance stipulated in the policy. The insurance Company declined to make such payment, on the ground that statements of material facts made by the insured to the company's medical examiner were untrue, but it tendered a return of the premium, which was refused.

The appellant thereupon brought this action in the Superior Court of Baltimore City. The declaration contains a count for money paid, for money received, and for money due on accounts stated, and two special counts on the policy, in one of which the amount claimed is $10,000, on the theory that death was due to natural causes, while in the other $20,000 is asked, on the theory that death was due to bodily injury through external and accidental violence. The defendant in its pleas raised the defences that (1) false and fraudulent warranties and representations inducing the contract were made by the insured; (2) that statements and representations of facts material to the contract which were untrue were made by the insured; (3) that death did not result from bodily injury received after the date of the policy, through external, violent and accidental means within sixty days after the injury.

A trial of the issues, tendered before a jury in the Superior Court of Baltimore City, resulted at the close of the whole case in an instructed verdict for the defendant, and from the judgment on that verdict this appeal was taken.

The most important question presented by the appeal is whether the effect of certain statements and representations, made by the insured in his application, of facts, said to be material to the contract, bars a recovery on the policy.

Attached to the policy, and by its terms made a part of it, was a statement by the insured that the "following questions and answers and all those I make to the company's medical examiner in continuation of this application are true, and are offered to the company as an inducement to issue the proposed policy." Following this statement were fifteen questions and answers numbered from one to fifteen, relating to the insured's history, occupation, family, dependents, other insurance, and certain stipulations exempting the company from liability in the event of death within one year as a result of certain designated contingencies, and an agreement that no person, other than certain officials of the insurer, had the power to make, modify or discharge the contract, to waive any of the company's rights, or to bind it by any promise respecting any benefits under the policy, or by accepting any representations or information not contained in the application. This part of the application was signed by the insured, and then followed a series of questions numbered sixteen to thirty-seven inclusive, asked by the medical examiner, and the answers thereto, also signed by the applicant, who certified as to them "that each and all of the aforegoing statements and answers were read by me and are fully and correctly recorded by the medical examiner."

Included in this series of questions and answers are the following, which are material to this inquiry.

"16.   What is your full name?   Arthur Loving.

"17.   What illness, diseases, injuries or surgical operations have you had since childhood?   Nothing but minor complaints.

"18.   State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years.   Dr. A. V. Leonard, Baltimore, August 11, 1919; cold in head.

"19. Have you stated in answer to question 17 all illnesses, diseases, injuries or surgical operations which you have had since childhood? (Ans. Yes or No.): Yes.

"20. Have you stated in answer to question 18 every physician and practitioner consulted during the past five years and dates of consultations? (Ans. Yes or No.): Yes. * * *

"27. Have you ever raised or spat blood? No. * * *

"32. Have you ever been under treatment at any asylum, cure, hospital or sanitarium? No."

The plaintiff, having proved the policy and the cause of death, closed her case. The defendant then offered evidence which showed that, on March 25th, 1915, the insured was received at the Eudowood Sanitarium, an institution for the treatment of tuberculosis, and remained there until February 1, 1916. He was at that time suffering from pulmonary tuberculosis in both lungs, and went there to be treated for that disease, and while there he was treated by Doctor Martin F. Sloan. He was also attended by Dr. J. Albert Chatard in November, 1914, for an attack of tubercular pneumonia, and it was upon his advice that he went to Eudowood for treatment. At the time of his discharge the disease was arrested, but not eradicated. This testimony was undisputed and uncontradicted, and in part was corroborated by the plaintiff, who testified that she went with her husband when he was taken to Eudowood, and visited him while he was a patient there.

The uncontradicted testimony therefore showed (a) that Loving in his application for insurance had said that he had never had any illness or disease other than minor complaints, that every physician who had prescribed for or treated him within five years was Dr. A. V. Leonard, and that he had not ever been under treatment in any asylum, cure, hospital or sanitarium, while (b) he had suffered from pulmonary tuberculosis, he had within five years been treated

for that disease by Drs. Chatard and Sloan, and he was under treatment at the Eudowood Sanatarium for tuberculosis from March, 1915, to February, 1916.

Since the statements to the company's medical examiner, made by the insured in reference to these matters, in his application for insurance, as an inducement to the company to issue the policy of insurance for which he applied, are in direct conflict with the actual facts as shown by the uncontradicted testimony, we must assume that they were untrue. And if such untrue statements as to matters within the knowledge of the insured were material to the contract of insurance, the insured was not entitled to recover on the policy, under the law as recognized in this State. That is, the concurrence of the two elements, the falsity of the statements and their materiality to the contract in respect to which they were made constituted a complete defence to any action on the contract. Nor can there be any reasonable doubt that the representations were material to the contract. Certainly, in any application for life insurance, nothing would likely receive more consideration or weight than the fact that the insured had at any time been afflicted with so fatal and tenacious a disease as tuberculosis. And since error in any diagnosis is possible, the questions asked of the insured were designed to elicit such information as, taken together with the physical examination, would reduce the possibility of error to the narrowest limits possible, and therefore questions relating to the insured's history in connection with this disease must be regarded as material. While it may be possible that the physician, who diagnosed the insured's earlier illness as tuberculosis, was mistaken, and while it is possible that, although he went to Eudowood for treatment for that disease, he did not have it, it is not probable that if the insurance company had known that within less than four years, in the opinion of two physicians who attended him at different times, he was suffering from tuberculosis, and had been for about ten months an inmate of a sanitarium, undergoing treatment for that disease, it would have issued the

policy. The issue in such a case is not whether the applicant
for insurance had, either at or before the time of the appli-
cation, actually had the disease, but whether he concealed
from the insurer, knowingly or inadvertently, facts known
to him of such probative force and value that, in all rea-
sonable probability, it would have accepted them as suffi-
cient proof that he had been afflicted with it. These princi-
ples have frequently been recognized and applied by this
Court in actions of the same character as the one before us.
In *Met. Life Ins. Co.* v. *Jennings,* 130 Md. 625, the Court
said: "This Court has said a number of times that ordi-
narily it is the province of the jury to determine the falsity
and materiality of the representations made in an applica-
tion for an insurance policy and the burden is upon the de-
fendant to satisfy the jury of the truth of these defenses, but
where the falsity and materiality of the representations are
shown by clear, convincing and uncontradicted evidence the
Court may so rule as a matter of law. *Fidelity Mutual Life
Insurance Association* v. *Ficklin,* 74 Md. 173; *Dulany* v.
*Fidelity and Casualty Company,* 106 Md. 17; *Mutual Life
Insurance Co.* v. *Rain,* 108 Md. 353; *Bankers Life Insur-
ance Company* v. *Miller,* 100 Md. 1; *Maryland Casualty Co.*
v. *Gehrmann,* 96 Md. 634; *Aetna Life Insurance Co.* v. *Mil-
lar,* 113 Md. 693; *Mutual Life Insurance Co.* v. *Mullan,* 107
Md. 463; *Forwood* v. *Prudential Insurance Co.,* 117 Md.
259," and in *Mutual Life Ins. Co.* v. *Mullan,* 107 Md. 467,
it was said: "The court below by granting the defendant's
12th prayer informed the jury, 'that in considering the ques-
tion of materiality of any of the answers in the application,
they were to consider, not what disease, if any, caused the
death of the insured, but the effect that said answers might
have had in procuring the issuance of the policy by the de-
fendant, and if the jury should find that any answer was in-
correctly given by the insured which materially affected the
risk assumed by the defendant in issuing the policy, then
regardless of the causes that finally produced the death of the
insured, under the pleadings in the case the verdict must be

for the defendant.' As there is no appeal from the Court's ruling in regard to this prayer, it is not before us for review, and becomes the law of this case. We deem it only proper to say, however, that we consider the prayer substantially correct."

The underlying error in the appellant's contention, and one which pervades the entire argument in her behalf, is that, in order to present a complete defence on the ground of misrepresentations to an action on an insurance policy, it must appear that the misrepresentations were false and fraudulent and material, and that therefore good faith is necessarily an issue. That proposition, however, is not sound, and was expressly repudiated by this Court in *Bankers' Ins. Co.* v. *Miller*, 100 Md. 6, where it is said: "The better authorities agree that a material misrepresentation made by an applicant for life insurance in reliance on which a policy is issued to him avoids the policy whether it be made intentionally or through mistake and in good faith. This doctrine rests upon the fact that even if the untrue material representation be innocently made it deceives the insurer who relies upon it and thus the risk which he actually assumes is different from the one which the action of the applicant in making the representation led him to suppose he was assuming."

We will now consider in detail the eighteen exceptions found in the record. The first exception relates to the court's refusal to permit counsel for the appellant to ask Doctor Chatard on cross-examination if it were not possible for a person, who had suffered from tuberculosis but in whom it had been arrested, to live on for a normal period; the tenth and eleventh exceptions relate to the exclusion of evidence tending to show the apparent physical appearance of the insured just prior to his last illness. These questions had no apparent relevance to any issue in the case and we find no error in these rulings. The fact that the insured might possibly live for a period of normal duration notwithstanding that he had had the disease referred to, or that before his last illness he was apparently in good health, could not re-

flect upon the question as to whether he had made the untrue statements referred to of material facts relating to his past health, which induced the issuance of the policy.

In the course of the trial the defendant offered the testimony of William W. Hill, record manager of the Metropolitan Life Insurance Company, to show that they had issued no policy to "Arthur Loving," and it also offered the testimony of Frank M. Everett, assistant manager of the Prudential Insurance Company, to show that it had not issued any policy to a person of that name. On the cross-examination of these witnesses they were asked about the existence of a medical information bureau, an organization maintained to afford to insurance companies information relating to persons applying for insurance to the companies served by the bureau. Later the plaintiff offered testimony of Charles G. Smith, tending to show that that bureau had in its records a card showing that Robert A. Loving, on December 3rd, 1914, had pneumonia. Doctor Buckler, for the defendant, had testified that applications for insurance in the Mutual Life Insurance Company passed through the medical inspection bureau, and the evidence was offered under the theory that, as the records of the bureau, to which the appellee had access, showed that "Robert A. Loving" had had pneumonia in 1914, that therefore it could have known that he was making a false statement when he said in 1919, in the application referred to above, that he had never had any disease other than minor complaints, and that, since the company accepted the premium and issued the policy with knowledge of the false statement, it could not rely upon the fact that it was made, as a defence. The court rejected that view and struck the testimony out. Its rulings in respect to this testimony are the subject of the second, third, fourth, fifth and sixth exceptions. It is not clear what relation this evidence had to any fact in issue, and we find no error in these rulings. It does not appear that the card relating to Robert A. Loving was ever in the possession of the appellee, or that it knew or could have known of it, or that, if it had been, that there

was any reason to assume, if it ever discovered it at all, that "Robert A. Loving" was the same person as "Arthur Loving," especially since the applicant himself signed the application as "Arthur Loving," or that in any examination of its records for information relating to Arthur Loving it could have discovered it if it had been filed under the name of Robert A. Loving.

We find no error in the court's refusal to permit Mrs. Loving, a witness called by the plaintiff in rebuttal, to testify to a conversation between the insured and Doctor Sloan, which is the subject of the seventh exception.

A witness for the plaintiff was asked whether Mr. Peppler, the agent who solicited the insurance, had told him of any statement made by Loving at the time of the application with regard to his health. The refusal of the court to allow this question is the subject of the thirteenth exception.

In the examination of John M. Kennedy, a witness called in rebuttal for the plaintiff, she offered to prove that the insured had told him that he told Doctor Buckler, when he was examined by him, that he had been treated at Eudowood for tuberculosis by Doctor Sloan, and that the insured also told the witness that he had made a similar statement to Mr. Peppler, the appellee's agent. The refusal of these offers is the subject of the sixteenth and seventeenth exceptions. Treating the exceptions as proper, we find no error in these rulings. The statements referred to in the offer, which is the subject of the sixteenth and seventeenth exceptions, are no more than self-serving declarations, in direct conflict with the signed statement of the insured, and are clearly hearsay and therefore inadmissible. The appellant, however, contends that as the insured is charged with bad faith, his own declarations are admissible to show his good faith. There are cases of course to which such a principle might apply, as, for instance, where the insured was charged with fraud in mis-stating his age. There his statements, to some degree, necessarily rested upon the information received from others, and his statements as to his age have been received in some

cases as evidence of good faith, by showing that he actually believed his age to be as given in his application. *Dillon* v. *Mutual Reserve Fund Life Assn.,* 5 Ont. L. Rep. 434. The scope of the rule thus stated has in other cases even been extended, and in *Askey* v. *New York Life Ins. Co.,* 102 Wash. 27, L. R. A. 1918 F. 267, where the insured was charged with making false statements as to his health, evidence of his declarations as to his health, made at a time when he was not contemplating insurance, was admitted.

Even if we accepted the rule as stated in these and similar cases, which in this opinion we do not, it would not justify the admission of this testimony. The statement of an insured person as to his physical condition, offered to show that his own belief as to his condition corresponded with his representations in regard thereto to the company, is quite a different thing from his declarations to strangers that the falsity of his representations was known to the company's agent as well as to himself. But aside from that, such evidence has, when allowed, been admitted as bearing upon the issue of good faith, but here that question is not in issue, but is quite collateral to the real issue, which is whether the representations were false and material. If they were false and material, their effect upon the insurer would not be at all affected by the fact that they were made in good faith, since the injury occasioned by the statements would be the same whether they were made in innocence or in fraud.

The thirteenth exception presents a somewhat different question. There a witness for the plaintiff was asked to tell what he heard Peppler, the appellee's agent, say as to what he, Peppler, had heard Loving say as to his health at the time of his application. The appellant contends that this question should have been allowed under the rules stated in *Dulany* v. *Fid. & Cas. Co.,* 106 Md. 17, in which it was held that, in an action on an insurance policy, it is relevant to show that the insurance company's agent was, when the contract was made, informed of facts relative to the insured's health, which varied from the answers found in the application.

What was said in that case must be considered in connection with the reason for the rule there under consideration, and which has been thus stated: "It is because such declaration or act was made at the very time of the birth of the contract or transaction, or stood sponsor to it, and is treated, therefore, as the direct act of the principal, constituting a part of the *res gestae*, really an integral part of the whole negotiation." * * * "Hence has been deduced the general rule that parties are not chargeable with the declarations of their agents, unless such declarations or statements are made during the transaction of business by the agent for the principal and in relation to such business and while within the scope of the agency: in other words, unless the representations may be deemed a part of the *res gestae*."

The declaration of an agent, to be binding upon the principal, must at least have been made during the agency, and pending the transaction to which it related. There is nothing in the question referred to in this exception to indicate that the supposed declaration by Peppler was made either pending the transaction or during his agency.

But aside from that, the testimony involved in these three exceptions was properly excluded on another and a more satisfactory ground. In this case the insured deliberately certified that he had read the statements and answers recorded by the medical examiner, and that they were fully and correctly stated. Conceding that these answers are false, the appellant endeavors to avoid the effect of the deception by showing that the company's agents knew and approved of it. The theory of that contention is that, while the misrepresentation was a deliberate fraud, nevertheless the company is estopped from relying upon it as a defence, because its own agents joined with the insured to deceive and defraud the insurance company. That, however, is not the law. An obligation to deal fairly and honestly rests equally upon all the parties to such a contract as this, and if the insured, in violation of that duty, entered into a fraudulent collusion with agents of the company to deceive and thereby defraud it, the

insured and his beneficiary would themselves be estopped from asserting or relying upon such guilty knowledge on the part of the company's agents in exculpation of the fraud. The reason for this conclusion is stated in *Mut. Life Ins. Co. v. Hilton-Green,* 241 U. S. 622, where it is said: "The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing."

The eighth, ninth, twelfth, fourteenth and fifteenth exceptions relate to the exclusion of evidence of the insured's general reputation for truth and veracity. The evidence was offered to show that the insured had acted in good faith in giving the answers and information contained in his application for insurance. It cannot be disputed that certain statements and answers given by him in that application as to material facts were false, and that he must have known that they were false, and it is not apparent how evidence that the fact that his reputation for truth and veracity was good could under those circumstances have shown or tended to show that he acted in good faith, if his good faith was an issue in the case. But it was not. The issue was whether he had made false statements as to facts within his knowledge and material to the contract, and whether he made them in good or bad faith was immaterial, since in either instance the effect was the same. As was said in *Mut. Life Ins. Co. v. Hilton-Green, supra:* "Incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud." *Met. Life Ins. Co.* v. *Jennings,* 130 Md. 622;

*Mut. Life Ins. Co. v. Mullan,* 107 Md. 457; *Bankers' Life Ins. Co. v. Miller,* 100 Md. 6. In our opinion therefore this evidence was properly excluded.

The remaining exception deals with the court's action on the prayers which in effect directed a verdict for the defendant. For reasons already given there was no error in these rulings.

It is unfortunate that the effort of the insured to provide for his dependents should be frustrated, but the fault was his own. The essential and decisive facts are conclusively proved by uncontradicted testimony, and the principles of law applicable to them clear and well settled. Under such circumstances it becomes the duty of the court when requested to do so to so instruct the jury.

Finding no error in the rulings of the lower court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*