## MUTUAL LIFE INSURANCE COMPANY *vs.* NELLIE B. ROBINSON. ·

*Insurance policies; applications; misstatements; warranties or
representations; bad faith. Bright's disease. Prayers;
when erroneous; not reversible error; taking case
from jury; conflicting evidence; rejection of cor-
rect prayers; when not reversible error.*

Where statements in an application for life insurance are war-
ranties, the company can defeat an action on the policy by
showing that the misrepresentations were made in bad faith,
or that representations material to the risk were untrue,
although made in good faith.                    pp. 419-420

If in such a case it is agreed by the parties that the facts are
·material, then only their truth is open to the consideration
of the jury.                                       p. 420

Where the bad faith of the application, or the falsity or mate-
riality of the misrepresentations, is shown by clear and uncon-
tradicted evidence, the Court may so rule as a matter of law,
and the Court may instruct the jury that certain specific dis-
eases such as cancer, tuberculosis or Bright's disease, are mate-
rial to the risk.                                   p. 420

Forms of prayers approved of in actions on life insurance poli-
cies.                                              p. 420

The rejection of prayers correct in themselves presents no
reversible error, where the principles upon which they are
based are fully covered by other prayers that were granted.

p. 421

It is not proper to grant an instruction withdrawing a case
from the jury, when the evidence upon essential facts neces-
sary to support the same is conflicting.            p. 420

The instruction given in the case of the *Mutual Life Insur-
ance Company* v. *Rain,* 108 Md. 353, is not one to be taken
as a model in ordinary suits upon life insurance policies.

p. 422

The granting of an erroneous instruction is no ground for a reversal when it caused no injury to the party objecting.

p. 422

*Decided April 5th, 1911.*

Appeal from the Circuit Court for St. Mary's County (BRISCOE, C. J., CAMALIER, BEALL, JJ.).

The following are the prayers in this case :

*Plaintiff's 1st Prayer*—If the jury find from the evidence in this case that the defendant executed the policy of insurance offered in evidence and delivered the same to Henry T. Robinson in his lifetime and that the said Henry T. Robinson paid the defendant all the premiums payable thereon up to the time of his death and complied with all the undertakings stipulated to be performed on his part in said policy, and that on the 25th day of September, 1909, he died; and that Nellie B. Robinson, his wife, the beneficiary named in said policy of insurance, did exhibit and deliver to the defendant due proof of the death of said Henry T. Robinson, as required by the terms of the said policy, on or about the 10th day of October, 1909, and before the commencement of this suit, then the plaintiff is entitled to recover in this action. (*Rejected.*)

*Plaintiff's 2nd Prayer*—If the jury find from the evidence that the defendant executed the policy of insurance offered in evidence and delivered the same to Henry T. Robinson in his lifetime, and that said Henry T. Robinson paid the defendant all the premiums payable thereon up to the time of his death and complied with all the undertakings stipulated to be performed on his part in said policy, and that on the 25th day of September, 1909, he died, and that Nellie B. Robinson, his wife, the beneficiary named in said policy of insurance, exhibited and delivered to the defendant due proof of the death of the said Henry T. Robinson, as required by the terms of the said policy, on or about the 10th day of October, 1909, and before the commencement of this suit,

then the plaintiff is entitled to recover in this action, unless the jury shall 'find from the evidence that Henry T. Robinson in his application for insurance made some misrepresentation or untrue statement, and that said misrepresentation or untrue statement (if the jury shall find any) was material to the risk. (*Granted.*)

*Plaintiff's 3rd Prayer*—The jury is hereby instructed that the burden of proving that Henry T. Robinson in his application for insurance offered in evidence in this case made a misrepresentation or untrue statement rests upon the defendant, and if the jury is convinced that the said Henry T. Robinson did make a misrepresentation or untrue statement in said application, the burden of proving that the said misrepresentation or untrue statement is material to the risk rests also upon the defendant. (*Conceded.*)

*Plaintiff's 4th Prayer*—If the jury find from the evidence in this case that at the time of the issuing of the policy of insurance offered in. evidence, John S. Jones was the agent of the defendant, and made out the application upon which said policy was issued and had knowledge at that time that Henry T. Robinson was a sick man with Bright's disease, and not an insurable risk, then the defendant is estopped from denying their liability under the said policy, and their verdict must be for the plaintiff. (*Rejected.*)

*Plaintiff's 5th Prayer*—The jury is hereby instructed that if they find from the evidence that the defendant did not require the applicant, Henry T. Robinson, to state what disease Dr. Lynch treated him for, but accepted his application and issued the policy in suit without requiring the question in the application relating to this matter to be answered, then the defendant waived its right to show by Dr. Lynch that he treated the said Henry T. Robinson for Bright's disease, and are estopped from relying upon the fact (if so found by the jury) that the applicant had Bright's disease at the time he made his application to defeat this action. (*Rejected.*)

*Plaintiff's 6th Prayer*—If the jury find for the plaintiff, then the plaintiff is entitled to recover the sum of one thousand dollars ($1,000), the amount of the policy, and they may also allow, if in their discretion they may see fit to do so, legal interest on said sum of $1,000 from such time the jury may find the defendant received and accepted satisfactory proof at its head office of the death of Henry T. Robinson down to this date. (*Conceded.*)

*Defendant's 1st Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence in this case that Henry T. Robinson, the insured, made false representations in his written application for insurance, and further find that such false representations were material to the risk assumed by the defendant in issuing the policy of insurance which is the cause of action in this case, then their verdict must be for the defendant, notwithstanding they believe the insured made such representations unintentionally or through mistake and in good faith. (*Rejected.*)

*Defendant's 2nd Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence in this case that Henry T. Robinson, the insured, was afflicted with Bright's disease at the time of his application, and that he affirmatively answered the question in said application, "Are you now in good health?" then such answer constituted a false statement upon a matter material to the risk assumed by the defendant in issuing the policy of insurance which is the cause of action in this case, and their verdict must be for the defendant; notwithstanding they believe the insured was ignorant of the fact that he was so afflicted. (*Rejected.*)

*Defendant's 3rd Prayer*—The defendant prays the Court to instruct the jury that if they shall find from the evidence in this case that Henry T. Robinson, the insured, was afflicted with Bright's disease in January, 1908; that a urinalysis of his urine made at intervals of two or three weeks thereafter by the physician who made the first urinalysis in January, 1908, up to the summer of that year, showed that he was afflicted with that disease throughout all this period;

that a medical examination of the insured by another physician in February, 1909, disclosed the fact that he then had Bright's disease, diagnosed by the physician who made this last examination as a case of long standing, and that the said insured died of Bright's disease in September, 1909, then they must find that the affirmative answer of the said insured in his application for insurance Aug. 13th, 1908, to the question in said application, "Are you now in good health?" must have been false upon a matter material to the risk assumed by the defendant in issuing the policy of insurance, which is the cause of action in this case, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 4th Prayer*—The defendant prays the Court to instruct the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover under the pleading in the case, and that therefore their verdict must be for the defendant. (*Rejected.*)

In lieu of defendant's first prayer the Court gave the following instruction to the jury:

The Court instructs the jury that if they find from the evidence in this case that the insured, Henry T. Robinson, made false representations in his written application for insurance, and further find that such representations were material to the risk assumed by the defendant in the policy of insurance issued in this case, and that the defendant was misled in issuing the policy of insurance by such false misrepresentations, their verdict should be for the defendant, even though the jury may find that such representations were made in ignorance of their untruth.

In lieu of the defendant's second and third prayers, the Court gave the following instructions to the jury:

The Court instructs the jury that if they find the issue of the policy sued upon in this case by the defendant company, and that the said policy was upon the life of Henry T. Robinson for the benefit of his wife, Nellie B. Robinson, the plaintiff herein, and that said policy having been so issued was in force at the date of the death of Henry T.

Robinson, in so far as any default having taken place after the issue of the policy, and if they further find that at the date of the issue of the policy Henry T. Robinson was not suffering from Bright's disease or from any of the diseases mentioned in the policy, then they may find a verdict for the plaintiff in this case.   But if the jury find from the evidence, notwithstanding the other facts mentioned relating to the issue of the said policy, and the fact of its being in force at the date of the death of Henry T. Robinson, and if they also find the fact from the evidence at the time of the issue of the policy the said Henry T. Robinson was suffering from Bright's disease or any of the diseases mentioned in the policy, and that said Bright's disease or other diseases mentioned in the policy finally resulted in his death, then their verdict shall be for the defendant.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON and URNER, JJ.

*Carlyle Barton* and *Randolph Barton,* for the appellant.

*J. Frank Parran* and *John B. Gray,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for St. Mary's county in favor of the appellee upon a policy of life insurance issued by the appellant.   The policy was issued on the 13th day of August, 1908, and it insured for one thousand dollars the life of Henry T. Robinson for the benefit of his wife, Nellie B. Robinson, the appellee.   Henry T. Robinson, the insured, died of Bright's disease on the 25th of September, 1909.   The appellant refused to pay, and the appellee brought suit upon the policy.   The declaration is in *assumpsit*.   The appellant filed the general issue plea, and two special pleas.   The first special plea alleged that the insured induced the defendant to issue the policy by falsely and fraudulently representing at the time of his

application therefor that he was in good health, when in truth and in fact he was not then, nor when the policy was issued, in good health, but was at those times, as well as for some time prior thereto, afflicted with Bright's disease, a disease which tends to shorten human life. The second special plea alleged that the said insured made other false and fraudulent representations in the written application made by him as an inducement to issue the policy, which representations were of matters material to the risk assumed by the defendant in issuing the policy.

The premiums appear to have been paid as they fell due during the lifetime of the deceased, and after his death proper proof of death was furnished to the appellant. The sole defense to the suit was that the insured had induced the appellant to issue the policy by false and fraudulent representations material to the risk, and these false and fraudulent representations, relied upon to avoid the policy, are those set out in the first special plea.

At the trial of the case, the plaintiff offered in evidence the policy of the insured, proof of death, and the original application for insurance. The application was made to the appellant company and signed by the insured on August 12th, 1908, and it is therein stated that "all the following statements and answers and all those that I make to the company's medical examiner in continuation are true and offered to the company as an inducement to issue the proposed policy, which I hereby agree to accept, and which shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been issued during my continuance in good health, except in case a binding receipt shall have been issued as hereinafter provided". In answer to a question put to him by the medical examiner, the insured stated that he was in good health. The following condition appears in the policy of insurance: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the

insured shall avoid or be used in defense to a claim under
this policy unless contained in the written application here-
for, a copy of which is endorsed hereon or attached hereto."

In order to dispose of the legal questions presented by the
appeal it will be necessary to give an outline of the sub-
stantial facts appearing in the record. The plaintiff testi-
fied that she was the widow of Henry T. Robinson, the
insured, and the beneficiary mentioned in the policy; that
she had been married to her husband for about fifteen years
at the time of his death; that he died on September 25th,
1909; and that she had never been paid as such beneficiary,
although proof of death had been duly forwarded to the
defendant and demand for payment made. She testified
that her husband had died of Bright's disease; that he had
been ill four or five months immediately preceding the date
of his death; that the immediate cause of death was heart
disease, and that she did not know her husband had Bright's
disease until she was told by the doctor who so certified in
the proof of death.

John S. Jones testified that he was the solicitor or agent
of the defendant on August 13th, 1908; that he knew Henry
T. Robinson, and solicited him to have his life insured and
prepared him an application for insurance. He identified
the application offered in evidence as the one prepared by
him and forwarded to the company, except that certain writ-
ing thereon whereby it appeared that some person or officer
of the defendant company had requested the issuing of an
endowment policy for $1,000 instead of an ordinary life
policy for two thousand dollars for which the application
had been made, and not upon the application when for-
warded; that about one month after the application had
been sent in, the company sent him the policy, and he found
that it was an endowment policy for $1,000 for fifteen years
instead of an ordinary life policy for two thousand dollars
for which Robinson had applied; that Robinson had at first
refused to accept the policy, stating that it was not such a
policy as he applied for; but that about two weeks thereafter,

upon the advice of the witness, Robinson determined to accept the policy as sent, and so notified the witness, who delivered the policy to him. The plaintiff then closed her case. The defendant then introduced in evidence the application for insuránce made by Robinson for the purpose of showing the answers and statements of the insured as to diseases and sicknesses he had prior to the date of his application on the 13th of August, 1908, and as to the condition of his health at that time. It then called Doctor Thomas Lynch, a physician of St. Mary's county, who testified that about the middle of January, 1908, Henry T. Robinson had spoke to him and asked him for medicine, stating that he was suffering from asthma; that he stated he could not sleep; that at that time he thought Robinson had Bright's disease or valvular heart trouble, and that he gave him digitallis, and told him to come over to witnesses' office later. He further testified "that Robinson came over in about two weeks thereafter, and witness examined Robinson's urine and tested it, and found it loaded with albumen. That his diagnosis showed that Robinson had Bright's disease, complicated with heart trouble, a complication almost always existing in Bright's disease. That he gave him a certain drug, and he got a little better. Robinson showed him a bottle of medicine he had been taking. He saw Robinson at intervals until in November, 1908, Robinson coming to see him at his office at Leonardtown every time Robinson came to town, when he would prescribe for him, and at Robinson's request would examine his urine, and at every such examination showed albumen; that he knew Robinson had a case of Bright's disease, which must prove fatal, and that he knew he must die within a few years, although there had been cases of this disease through which the patient had lived for fifteen years." He further testified that he told the plaintiff some four or five months after he began prescribing for her husband, that he had a complication of Bright's disease and heart trouble, of which he would certainly die; that he told her this prior to August 13th, 1908, at Lawrences Hotel,

in Leonardstown.  He stated that he did not tell Robinson that he had Bright's disease, and that he never told any of his patients when they had a disease which he knew would necessarily prove fatal, because upon most persons such information would have a bad effect; that on one occasion Robinson asked him if he would pass him for life insurance, and that he replied he could not pass a sick man, and advised him to go home and get well first.  He stated that after this conversation, John S. Jones, the agent of the appellant, asked if he would pass Robinson for life insurance, and that he told Jones that he could not do so because Robinson was a sick man; that neither he, nor anyone else could cure him, and that Jones stated that he would get a doctor who would pass him for life insurance.  On cross-examination he stated that he told Robinson that he did not have Bright's disease, and that he also told him, in the presence of Mrs. Robinson and a Mrs. Graves about August 16th, 1908, that he saw no reasons why he would not pass for life insurance.  He admitted that he was a drinking man, and at times drank to excess.

Bruce Mattingly testified that he had known Robinson since June, 1908, and that he appeared to him at that time to be in good health; but that he had heard Robinson sometime in the year 1908 complain of having heart trouble, and had also heard him complain of not being able to sleep, but he thought that was in the year 1909.

Frederick Wathen testified that he had known Robinson since he was a boy; that he thought he was in bad health for a time about a year before he died; that he had heard him complain of not being able to sleep, and of shortness of breath when he took exercise; but that he appeared to him to be in good health.

Doctor L. B. Johnson attended the insured in his last illness.  He first prescribed for him in the fall of 1908. In February, 1909, Robinson called on him, and he found that he had a well-advanced case of Bright's disease, and from the condition of his kidneys in February, 1909, the

doctor stated that this disease probably was of long standing. He had described for Robinson prior to January, 1908, for insomnia, a trouble which the insured disclosed to the medical examiner.

In rebuttal the plaintiff called Dr. Joseph O. King, who testified that he was the examining physician of the defendant company, and that he made the medical examination of the insured at the time of his application for insurance, on August 13th, 1908; that he had practiced medicine for fifteen or sixteen years in St. Mary's county, and as far as he could ascertain from the examination, Robinson was in good health, and he recommended him as a good risk. He made an examination of his urine and found it normal, and there was no evidence of Bright's disease, and that in his opinion the insured did not at that time have Bright's disease; that he used two tests, the test for sugar and the test for albumen; that he found some sugar and some albumen, but not more than in the case of persons in good health, and that the analysis disclosed that the urine was in a normal condition.

The plaintiff in rebuttal denied that Doctor Lynch told her that her husband had a complication of Bright's disease and heart trouble, of which he would certainly die.

At the close of the testimony the plaintiff submitted six prayers for instructions to the jury. The Court granted her second prayer and rejected her fourth and fifth. Her third and sixth prayers were conceded. The defendant submitted four prayers, all of which were rejected. The reporter will set out in the report of the case the plaintiff's granted and conceded prayers, and also the defendant's rejected prayers. In lieu of the defendant's first, second and third prayers, the Court gave two instructions of its own. By its first instruction the jury were told that if they found from the evidence that the insured made false representations in his written application for insurance, and further found that such representations were material to the risk assumed by the defendant in the policy of insurance issued in this case, and that the defendant was misled in issuing the policy of

insurance by such false misrepresentations, their verdict should be for the defendant, even though the jury might find that such representations were made in ignorance of their untruth. Its second instruction was in these words: "The Court instructs the jury that if they find the issue of the policy sued upon in this case by the defendant company, and that the said policy was upon the life of Henry T. Robinson for the benefit of his wife, Nellie B. Robinson, the plaintiff herein, and that said policy having been so issued was in force at the date of the death of Henry T. Robinson, in so far as any default having taken place after the issue of the policy, and if they further find that at the date of the issue of the policy Henry T. Robinson was not suffering from Bright's disease or from any of the diseases mentioned in the policy, then they may find a verdict for the plaintiff in this case. But if the jury find from the evidence, notwithstanding the other facts mentioned relating to the issue of the said policy, and the fact of its being in force at the date of the death of Henry T. Robinson, and if they also find the fact from the evidence at the time of the issue of the policy the said Henry T. Robinson was suffering from Bright's disease or any of the diseases mentioned in the policy, and that said Bright's disease or other diseases mentioned in the policy finally resulted in his death, then their verdict shall be for the defendant." The action of the Court upon the prayers and in giving the two instructions mentioned presents the only exception contained in the record. Upon the special facts of the case as they have been stated, did the Court commit reversible error?

If the insured were guilty of fraud, the statements made by him in his application and in his answers to the medical examiner became, by the express terms of the contract, warranties. In the absence of fraud they must be treated as representations, and not warranties. Treating these statements as warranties, the defendant could have defeated a recovery upon either of two grounds; first, by showing that the statements or representations were made in bad faith, and, second,

by showing that the misrepresentations or untrue statements related to some matter material to the risk, notwithstanding the misrepresentations were made in entire good faith. Upon the hypothesis, that the statements made by the insured were representations merely, and that by the agreement of the parties, they were made material to the risk, then their truth alone was open to the consideration of the jury. However the statements may be treated, whether as warranties, or mere representations, the question of good faith, falsity, or materiality is ordinarily one to be passed upon by the jury. But where the bad faith of the applicant, or the falsity, or materiality of the misrepresentation is shown by clear and uncontradicted evidence the Court may so rule as a matter of law, and it is within the power of the Court to instruct the jury that certain specific diseases, such as cancer, tuberculosis, or Bright's disease are material to the risk, because the knowledge that the applicant was afflicted with either of these diseases would necessarily influence the company in determining whether or not it would accept the risk. These principles have been declared in many cases in this Court, among which are: *The Mutual Life In. Co.* v. *Wise,* 34 Md. 597; *Fidelity Mutual Life In. Co.* v. *Ficklin,* 74 Md. 173; *Bankers' Life In. Co.* v. *Miller,* 100 Md. 1; *Maryland Casualty Co.* v. *Gehrmann,* 96 Md. 634; *Monahan* v. *Mutual Life In.* Co., 103 Md. 155; *Mutual Life In. Co.* v. *Mullan,* 107 Md. 457; *Mutual Life In. Co.* v. *Rain,* 108 Md. 353; *Aetna Life In. Co.* v. *Millar,* 113 Md. 686.

In light of these principles, there can be no doubt that the defendant's first, second and third prayers were based upon sound legal propositions, and that it had introduced evidence tending to support the hypotheses of facts stated in them, and they might well have been granted, and except for the two instructions given by the Court of its own motion, the rejection of these prayers would have constituted clear reversible error. The defendant's fourth prayer, which sought to withdraw the case from the jury, was properly refused. The evidence upon the essential facts was so con-

·flicting that it would have been improper to have granted this prayer.

The plaintiff's second prayer is said to be bad, because it ignores the question of the bad faith of the insured, and the objections urged to the two instructions given by the Court are that the first refers the question of materiality to the jury, and also requires them to find whether the defendant was misled by false statements made by the insured, and it is urged that the second instruction ignores the answer of the insured that he was in good health, and requires the jury to find not only that he was suffering from Bright's disease at the time the policy was issued, but "that said Bright's disease, or other diseases mentioned in the policy finally resulted in his death," before they could find for the defend-ant. As applied to the facts appearing in the record, these prayers we think fairly submitted to the jury the only defense which the company could make to this suit, viz, that the insured was not in good health at the time he made appli-cation for the policy, because at that time he had Bright's disease. It was admitted that this disease caused his death, and there was no dispute about this at the trial, and while the clause quoted above from the second instruction was erroneous, and might be reversible error upon a different state of faits (*Mutual Life Insurance Company* v. *Mullan, supra*) no harm could have thereby resulted to the defendant in view of the conceded fact in this case that the insured did ·die of Bright's disease. It is not claimed that the insured made any other false statement, nor is it pretended that he was guilty of bad faith in any other respect. His bad health, if it existed at all, was due solely and exclusively to Bright's disease at the date of his application, and, therefore, the questions of bad faith, material misrepresentation, and falsity of the answer that he was in good health, were necessarily involved in the inquiry as to whether he had Bright's disease at the date of the application, or the issuance of the policy. This appears to be the sole question of fact involved in the trial. If at that date the insured was afflicted with Bright's

disease, the plaintiff was not entitled to recover, and the Court so instructed the jury. If at that time he was not so afflicted, the plaintiff was entitled to a verdict. As the case went to the jury under the instructions granted, the substantial defense to the action was open for their consideration, and while there was error in the rulings of the Court upon the prayers and in the granted instructions, we are of the opinion that the only real question involved in the case was fairly submitted to the jury.

The Court's second instruction, which is transcribed above, is a copy of the instruction given in the case of *Mutual Life Insurance Company* v. *Rain, supra,* a case in many of its facts very similar to this. As applied to those facts, the Court found no reversible error in the instruction, and affirmed the judgment. But that form of instruction must not be taken as a model in this class of cases. In the usual and ordinary cases of suits upon life insurance policies it would not be wise to use that form of prayers. Finding no reversible errors committed by the Court, the judgment will be affirmed.

> *Judgment affirmed with costs to the appellee above and below.*