## ANNIE M. FORWOOD *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

*Life insurance policies: application; materiality of answers and statements; question for the Court; liquor habits; authenticity of statement; acknowledgment by insured; effect on beneficiary; right to question; agent's authority.*

In a life insurance policy misstatements as to the habits of the applicant relating to the use of spiritous liquors are matters materail to the risk.    .                              p. 257

Whether the statements in the application for life insurance are material to the risk is a question of law for the Court.

p. 258

In an action on a life insurance policy, if it is conceded that the statements are untrue, but it is contended that they were not the answers and statements of the insured, the burden of proof to establish the contention is upon the plaintiff.

p. 258

Provisions in policies prohibiting agents from modifying the terms do not apply to conditions affecting the inception of the contract.                                          p. 260

Even though the statements in an application for a life insurance policy were not true and were not originally placed there by the applicant, yet, if the statements and answers as written were shown to the applicant and he agreed that "all the statements and answers to the above questions are complete and true" and agreed that they should "become a part of the contract of insurance hereby applied for," and "that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, etc," he is bound

by them, and the beneficiary named in the policy can not
recover.                                        pp. 261, 264

If the beneficiary named in the policy is to be allowed to prove
that the application did not truly state the applicant's
answer, it must be by positive and certain testimony and not
by ambiguous expressions.                        p. 263

*Decided January 11th, 1912.*

Appeal from the Superior Court of Baltimore City
(ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON and URNER, JJ.

*William L. Marbury* and *W. L. Rawls* (with whom was
*Jesse Slingluff* on the brief), for the appellant.

*German H. H. Emory* and *Morris W. Soper* (with whom
were *Edwin D. Duffield* and *James Guest* on the brief), for
the appellee.

BOYD, C. J., delivered the opinion of the Court.

On the 16th day of December, 1909, the appellee issued
an insurance policy on the life of William T. Forwood, the
husband of the appellant, which was originally payable to
the executors, administrators or assigns of the insured, but
the appellant was subsequently made the beneficiary.   The
insured died on the 21st of August, 1910, and the appellee
having declined to pay the policy, suit was brought thereon.
In addition to the two general issue pleas, the appellee
filed three special pleas—in the first of which it is alleged
that the insured made application on or about the 2nd of
December, 1909, for the insurance, "and on or about the
4th day of December, 1909, did falsely and fraudulently
represent and warrant to the defendant in continuation of
said application, and as part thereof, which application con-
stitutes a part of said policy of insurance, that he did not
use malt liquors, wines and spirits."   In the next plea (4th)

it is alleged that he falsely and fraudulently represented that he had never used malt and spirituous liquors to excess, and in the last (5th) that he represented that he was engaged, and had been for a long time prior thereto, as a salesman of pianos and sewing machines, and that he was not then engaged, had never been engaged, and had no intention of engaging in the manufacture, sale and handling of malt and spirituous liquors. The three special pleas seem to be in due form—making the necessary allegations that the representations and warranties were false, etc., and issue was joined on them.

The only exceptions taken were to the refusal to grant the plaintiff's first, second and third prayers, and to granting an instruction drawn by the Court. That instruction was: "The Court instructs the jury that uncontradicted evidence in this case shows that the statements made at the time of signing the application for insurance by the insured, whether as contained in the application or as testified to by the wife of the insured as then made by him, were untrue, and that these statements being material to the risk, their verdict must be for the defendant."

A verdict was rendered for the defendant in pursuance of that instruction, and from the judgment entered thereon this appeal was taken. The defense made by the first two special pleas (numbered third and fourth) will be considered together. In the application for insurance, under the head of "Declarations made to the Medical Examiner," there are the following statements: "3A. State the quantity you use each day of Malt Liquors (None), Wines (None), Spirits (None). C. Have you ever used malt or spirituous liquors to excess? (If yes, give full particulars.) No."

The evidence shows beyond all controversy, and it may be said to be without contradiction, that the statements made under 3A and the answer to "C," as written on the application were false. Fifteen or sixteen witnesses testified to the habits of the insured, and while some of them seemed to have had some difficulty in determining when a man could be

said to be "drunk", all of them had seen him more or less
under the influence of liquor, and some of them had fre-
quently seen him in that condition.  At times he became very
noisy and unruly, and on one occasion, when he was arrested
for indecent exposure of his person, he offered as an excuse
before the recorder of Atlantic City that he was under the
influence of liquor when it occurred.  He was living at
Atlantic City when he applied for this insurance and for sev-
eral years before, but left about the time the policy was
issued, and most of the witnesses who testified to his habits
knew him there.  Indeed the appellant said that he drank
a glass of beer or whiskey whenever he felt like it.  As the
insured admittedly signed the application, it would be use-
less to discuss this branch of the case, were it not for the
fact that the appellant contends that the insured did not
answer the questions as the answers are stated in the appli-
cation, but that they were written there by the medical
examiner, and are simply conclusions of the examiner and
his construction of what the insured said.  In other words,
it was in effect conceded that those answers, as they were
written in the application, were untrue, but it is contended
that they were not the answers given by the insured.

At least since the case of *Mutual Life Insurance Co.* v.
*Mullan,* 107 Md. 457, it cannot be doubted that such mis-
statements as are alleged to be in the application were con-
cerning matters material to the risk, and the insured neces-
sarily knew them to be false, if made as stated in the appli-
cation.  Mullan, in his application stated that his habit as
to the use of intoxicants was one glass of beer a day on an
average, and that such had been his habit in the past.  The
testimony showed that he drank to excess, was quite fre-
quently drunk and had been treated for acute alcoholism.
It was said in the opinion delivered by JUDGE WORTHING-
TON: "The fact that Mullan drank intoxicating liquors very
much in excess of 'one glass of beer a day on an average'
was also material to the risk as a matter of law, and the
Court below by granting the defendant's sixth prayer prop-

erly so instructed the jury." Again it was there stated: "As we have already said, the fact that the applicant used intox· icants very much in excess of one glass of beer a day on an average was palpably material to the risk." The burden was on the defendant (appellee) of proving the falsity of the statements and answers made in the application, and also, if untrue, that they related to some matter material to the risk. *Royal Arcanum* v. *Brashears,* 89 Md. 633; *Mullan's Case, Supra.* But that burden has been clearly and fully met as to the statements and answers in the application, and they were material to the risk and can be so determined by the Court as a matter of law, *Banker's Life Ins. Co.* v. *Miller,* 100 Md. 1; *Mullan's Case, Supra.* See also other cases cited in *Mutual Life Ins. Co.* v. *Robinson,* 115 Md. 408. Inasmuch then as the appellee has, with evidence which is uncontradicted, met the burden originally on it, and inasmuch as the insured admittedly signed the application, which declared, "that all the statements and answers to above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for," clearly the burden of showing that they were not the answers and statements of the insured, or that he qualified those statements and answers, but the agent of the company without his knowledge did not insert the qualifications, is shifted and rests upon the appellant.

In *Globe Reserve Mut. Life Ins. Co.* v. *Duffy,* 76 Md. 293, it appears that the medical examiner wrote down the answers to the various questions upon the printed application and among others it was stated that the insured had no pulmonary and no kidney trouble. The evidence on the part of the insurer tended to prove that he had, and for some years prior to that had had both of those troubles, from which he died in less than two months after the date of the policy. JUDGE McSHERRY said that if the medical examiner was the agent of the company, it required no argument to show that it was not within the scope of his authority to mislead and deliberately impose upon his principal, and

he then went on to say: "Notwithstanding this is so, there
are many cases in which, to prevent fraud and gross injustice,
an insurance company is estopped, on grounds of the highest
public policy, to object that the statements made by its agents
beyond the scope of their authority are false. But there
must be no complicity on the part of the assured; because, if
false answers be written in the application by the agent
with the knowledge of the assured the latter becomes an
accomplice and both perpetrate a fraud upon the company.
In such a case it is obvious that a recovery could not be
permitted upon a policy thus procured. And so, where false
answers have been written by the agent without the knowl-
edge of the assured, but the latter has the means at hand
to discover the falsehood and negligently omits to use them,
he will be regarded as an instrument in the perpetration
of the fraud, and no recovery could be had upon the policy."
He cited *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519,
and several other cases, and then continued: "If the assured
be neither an accomplice nor an instrument, and be imposed
upon without fault on his own part by the agent of the
company, his beneficiary will be entitled to recover, notwith-
standing the statements are inaccurate or untrue. *Keystone
Mut. Ben. Association* v. *Jones,* 72 Md. 363."

In *Fletcher's Case* the Supreme Court said it was the
duty of the insured to read the application he signed, and
after discussing that added: "There is another view of this
case equally fatal to a recovery; assuming that the answers
of the assured were falsified, as alleged, the fact would be
at once disclosed by the copy of the application, annexed to
the policy, to which his attention was called. He would have
discovered by inspection that a fraud had been perpetrated
not only upon himself, but upon the company, and it would
have been his duty to make the fact known to the company.
He could not hold the policy without approving the action
of the agents, and thus becoming a participant in the fraud
committed. The retention of the policy was an approval of

the application and of its statements.    The consequences of that approval cannot, after his death, be avoided."

It is true that the provision prohibiting an agent from changing or modifying the terms of a policy may not apply to conditions which relate to the inception of the contract, as illustrated in *Dulany* v. *Fidelity and Cas. Co.*, 106 Md. 34; *N. J. Mut. Life Ins. Co.* v. *Baker*, 94 U. S. 610, and *Ins. Co.* v. *Mahone*, 88 U. S. 593, and it is said in *Dulany's Case* that "If the actual facts were explained by the assured to the agent of the company through whom the policy was delivered to him and the premium collected and that agent undertook to determine whether the facts were material to the risk and wrote or instructed the appellant to write the answer appearing on the application, the company would be estopped to set up those facts to defeat an action to recover on the policy."    It may well be, and undoubtedly is in many cases, that insurance companies are estopped from taking advantage of the acts of their own agents, who, either designedly or by placing a wrong interpretation on the meaning of terms used in a policy, misstate or conceal some of the facts which applicants for insurance have laid before them.    It is unfortunately true that agents, in order to effect insurance, sometimes write in the applications, or in some way report to their principals statements which either are not justified by what the applicants say, or do not disclose the whole truth, as related by such applicants. Sometimes people may honestly differ as to whether a certain fact exists, or as to the necessity for a fuller disclosure, as may be illustrated by the question in the *Mahone Case, supra*, which was, "Is the party temperate and regular in his habits?"    Such a question might be answered differently according to the way different persons regarded the subject.

But in this case when the applicant was called upon to "State the quantity you use each day of malt liquors, wines, spirits," and answered to each, "None," it is clear he knew that was not true—whether we accept the testimony of the appellee's witnesses or that of the appellant.    It is not pre-

tended that such was the case. If then we apply the doctrine announced in *Fletcher's Case*, which was cited with approval in *Duffy's Case*, there can be no recovery, for the reasons stated by Judge McSherry in *Duffy's Case*, which we have quoted above. As in *Fletcher's Case*, the copy of the application of Forwood was annexed to the policy, and he not only declared that "all the statements and answers to the above questions are complete and true," as made in the declaration to the medical examiner, but at the end of the statements which he gave to the agent he referred to those made to the company's medical examiner, and agreed that they should "become a part of the contract of insurance hereby applied for, and it is further agreed that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained," etc.

But if there be any doubt about the law as applicable to the answers to the above (3A), can there be any as to the other (C)—"Have you ever used malt or spirituous liquors to excess ?" To that the reply, as stated in the application was "No". How was that met by the appellant ? The only witness who attempted in any way to contradict, modify or explain the answers made by Mr. Forwood, as shown on the application, was the appellant, unless that can be said of William H. Johnson, who was the agent that obtained the insurance. His testimony in the record is as follows: "Q. Did Mr. Forwood on that occasion state that he took a glass of liquor or beer whenever he felt like doing so ? A. He answered the question, None, then he put in afterwards that he did use a little in time of colds or anything like that; that was the only time he ever indulged. Q. What do you mean by time of colds ? (Objected to; objection sustained). The Court: Ask him to state whether he explained what he meant as to whether he had a cold or the weather was cold ? Witness: Just had a slight cold, he said."

A very striking peculiarity about the testimony of the appellant is, that so far as the record discloses she was not asked and did not say that the insured's answer to "C" was

not "No". All of her testimony in chief on the subject of her husband's drinking was: "That the doctor asked the question and wrote the answer down. That witness heard the question asked Mr. Forwood which is No. 3A, the question being, 'State the quantity you use each day of malt liquors, wines and spirits.' That in answer to that question Mr. Forwood told the doctor the amount he took, he took a glass of beer or a glass of whiskey occasionally whenever he felt like it, but he did not make a habit of getting drunk. That he said that he took a glass of beer or a glass of whiskey whenever he felt like it, but he did not make a habit of getting drunk. That is what Mr. Forwood said; when that answer was given by Mr. Forwood the doctor said to him, you don't make any habit of getting drunk, Mr. Forwood said, yes, sir. Q. Was that answer true? A. I guess it was. Q. That answer was given as to all the questions, malt liquor, wine and spirits, was it not? A. Yes, sir." She was then asked about question marked "D"—as to being in the liquor business—but no specific question appears to have been asked her about "C". Her cross-examination was in effect the same, and she was not then asked about the answer to "C". The two questions (3A and C) are by no means the same and are intended to get information as to both matters inquired about. It might be true that an applicant did not use literally *each day* any malt liquors, wines or spirits, and it might be that he had not used either for months or years, while it might be equally true that he had at one time used them to such excess as materially injured his health. Question C. was, "Have you *ever* used," etc.

But if we assume that she intended her testimony to apply to both 3A and 3C, it does not show that he did not answer "C" in the negative as stated in the application. He might have answered 3A as she said he did, and yet have answered "C" as the application shows. If she meant to say that he answered "C" by saying "he took a glass of beer or a glass of whiskey occasionally when he felt like it, but he did not make a habit of getting drunk," and if that had been in the appli-

cation, it was not true according to the testimony of many witnesses, and she does not say it was true. The nearest she came to saying so was when, in answer to the question, "Was that answer true," she replied, "I guess it was." Surely when we remember the burden was then on her to show that the application did not properly state his answer her statement "I guess it was" would not be sufficient to overcome the overwhelming testimony of numerous witnesses, or be sufficient to justify the Court in submitting that to the jury. Many witnesses showed that he was in the habit of getting drunk.

If a beneficiary is to be permitted to prove that the application did not truly state what the insured said, notwithstanding the fact that he declared that such written statements were true, and had in his possession, attached to his policy, a copy of the application for some months which showed what he had been reported to the company as saying, it must at least be done in a positive and certain way, and not by the use of ambiguous expressions. It must be remembered that we are dealing with a subject within the knowledge of the applicant, and not necessarily, or even presumably within the knowledge of the insurer. As reflecting upon the importance of such questions in the opinion of those in charge of this company, we will quote from the testimony of the medical director of the appellee. He testified: "That the company will not insure the lives of people who frequently become intoxicated, because it is a well known fact that the rates for life insurance will not cover the additional mortality that it is known that this or any other company would have to provide for if the person insured is intemperate. By additional mortality witness means mortality above the rates of the amount provided for by the rates for insurance. That persons who are intemperate and frequently get drunk do not live as long as other persons; that the same is true with regard to the sale and handling of liquors." He also said, in answer to a question, that his company would not insure a man "if I knew it was habitual

with him to become intoxicated once in every two months," and again, "That witness' company does not insure persons who frequently become intoxicated, if it knows at the time such application is made such person becomes intoxicated. That witness considers the action and habits of a person very material to the risk assumed under the policy by the Prudential Company." ·

Dr. Souder, the medical examiner, testified that he got the information which enabled him to write the answers from Mr. Forwood, that he asked Forwood the questions and he made those answers. It is true that on cross-examination he said he could not give the details of the conversation that took place—could not give his exact words, as he did not remember that far back, but in answer to the question, "Tell us what he told you," he said, "That is indicated by the answers, that he did not use those liquors, that he used none." On re-direct examination he said, "That if witness had seen anything there to indicate Forwood was a drinking man he would have reported it and he would not have recommended him as a first-class risk. If anyone had told him anything different than what he had reported to the company witness would have investigated. That witness is able to say that no person present, Forwood or anyone else, made any statement in his hearing to indicate that Forwood was a drinking man."

So without further reference to the testimony, it is clear that the appellant did not show that Mr. Forwood had made any statements at the time the answers were written in the application, which would relieve her of the barrier to recovery that the answer to question "C" furnishes, in view of the uncontradicted evidence that his answer to it was false. We will, therefore, affirm the judgment for the reasons we have given, without discussing the other ground relied on by the appellee, or the plaintiff's prayers, the rejection of which necessarily followed the instruction given by the Court. ·

> *Judgment affirmed, the appellant to pay the costs.*