MUTUAL LIFE INSURANCE COMPANY *v.* KATH-
ERINE I. HELD.

[No. 37, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before BOND, C. J., ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Randolph Barton, Jr.,* and *Forrest Bramble,* with whom were *Lawrence E. Ensor* and *Benjamin B. Rosenstock* on the brief, for the appellant.

*Elmer R. Haile,* with whom were *J. Howard Murray* and *Parsons Newman* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On March 22nd, 1927, Edward L. Held applied to the Mutual Life Insurance Company of New York, appellant, for two policies of insurance on his life for $5,000 each, which were issued to him. He died on February 6th, 1928, and, on the refusal of the appellant to pay the insurance, his wife and beneficiary, Katherine I. Held, entered suit and, judgment thereon being against the appellant, it appealed. Nine exceptions were reserved, of which eight were to rulings on the evidence and one, the ninth, to the rulings on the prayers. The first eight exceptions have been abandoned, leaving for consideration on this appeal the court's action in granting the plaintiff's three prayers, in overruling the defendant's exceptions to the plaintiff's first and second prayers, and in refusing the defendant's second to tenth and twelfth to twen-

ty-first prayers inclusive, its first, eleventh and twentieth prayers having been withdrawn.

The defendant's second prayer was a demurrer to the evidence, and the third asked for an instructed verdict on the ground that the uncontradicted evidence showed that certain statements of the insured in his application for insurance were untrue and were material to the risk. These prayers, therefore, require a recital of the facts set up in the application which reflect upon the medical history of the assured up to the time of the application.

Question 16 is: "What illnesses, diseases, injuries, and surgical operations have you had since childhood? Answer: Typhoid fever in 1900, duration 42 days, and a broken arm when a boy. 17. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years for any ailment, serious or not serious"? To which the applicant stated that he had been overcome by heat July 5th, 1926, when he was treated by Dr. John S. Green of Towson, and in November, 1926, he had nine teeth extracted by Dr. Pennington of Baltimore. Question 18 was: "Have you stated in your answer to question 16 all illnesses, diseases, injuries and surgical operations which you have had since childhood"? To which he answered "Yes." Question 19: "Have you stated in answer to question 17 every physician and practitioner consulted during the past five years and dates of consultation"? Answer: "Yes." (32) "Have you been under any restriction of diet or medical observation of any kind within one year for any purpose"? Answer: "No."

The medical examination was made by Dr. H. Warren Buckler for the appellant, who reported that the applicant's appearance was healthy, pulse rate 70, regular; urinary analysis clear, no albumen or sugar, and that "a careful inquiry and thorough physical examination show (no) evidence of past or present disease or functional disturbance of" brain or nervous system, heart, arteries, respiratory organs, kidneys, digestive organs," etc. The company accepted the risk and issued the policy subject to a fifty per cent. increase of

premium on account of the heat prostration and conditioned on the use of a truss for a hernia.

After the death of the insured, his family physician, Dr. Green, signed the death certificate, wherein he gave the cause of death as "coronary occlusion," preceded and complicated by arterio sclerosis. At the trial Dr. Green testified that he had been Edward L. Held's physician for six years; that for five years, except for the heat exhaustion, he had treated him for ordinary ailments, "for colds and he would come feeling tired and run down and wanted a tonic and he would sometimes come on account of nervousness. Just nothing of any serious nature that he ever complained of to me." He could not say how often he came, as the charges were for attention to wife and son as well, and all charged to Mr. Held, but says the visits were "not usually frequent, not any more than you would have your average patient," and estimated the number of visits at six times a year for 1925 and 1926. "I should say in taking it over the last two or three years that his main complaints were that he felt tired out and nervous, sometimes inability to rest properly and lack of appetite and sometimes towards the last few months of his life he complained of some digestive disturbances, inability to digest his food properly." "On these occasions he had some arterio sclerosis, that is, the surface vessels." The last time he saw Mr. Held prior to March, 1927, he was in good health. His condition was nothing unusual for a man fifty years of age. He said arterio sclerosis is a symptom and not a disease, and is a condition existing in practically everyone of fifty or more and grows with age. In answer to the question, "Did you ever tell him he had any kind of arterial sclerosis," Dr. Green answered, "No." He said he only recalled having gone to Mr. Held's house on two or three occasions, the night of the heat prostration, the day of his death, and he thought he was there the night following the teeth extraction. On all other occasions he saw him at his office. Dr. Green also testified that the ailments about which he had complained to him were not attributed to his arterial condition, and that there was no necessary connection between the sclerosis in the radial

arteries, which could be discovered by contact with the arteries themselves, and the coronary arteries.

The appellant's contention is that the complaints or illnesses for which the applicant consulted Dr. Green were material to the risk and should be so held as a matter of law, not because any of them were necessarily serious, but because of the assumption that if they had been disclosed the appellant would have rejected the application for insurance. In support of this contention it cites *Bankers Life Ins. Co. v. Miller,* 100 Md. 1, in which the insured failed to state she had been operated upon in a hospital for a malignant growth; *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, where the applicant stated that he was temperate and had never been treated for alcoholism, the proof being that he was a common drunkard who had been treated for years for alcoholism; *Forwood v. Prudential Life Ins. Co.,* 117 Md. 254, another temperate ( ?) drinking case; *Metropolitan Life Ins. Co. v. Jennings,* 130 Md. 622, wherein the applicant said he had never been in a hospital or sanatorium, though for nearly two years before his application he had rarely been anywhere else; and *Loving v. Mutual Life Ins. Co.,* 140 Md. 173, which was a tubercular case. In all of these cases the ailments concealed were patent, serious, and organic, whereas in the instant case the insured did not know he had arterio sclerosis, which had not affected his general health, and failed to mention consultations for ailments which in themselves were not serious and which, it was testified, were not related in any way to his arterial condition. In the opinions of this court in all of the cases mentioned, it was declared that ordinarily it is the province of the jury to determine the falsity and materiality of the representations made in the application for insurance, with the burden on the defendant, but where the falsity and materiality of the representations are shown by clear, convincing, and uncontradicted evidence, it may be a question of law for the court.

In the case of *Aetna Life Ins. Co. v. Millar,* 113 Md. 686, which was a suit on a health policy, the insured said, in his application made June 15th, 1908, that he had had

no medical attention for two years. He had consulted his family physician for ear trouble from May 17th to May 23rd, 1908, had consulted Dr. Hiram Woods, an eye and ear specialist, on May 21st, 1908, who found him suffering from an acute inflammation of the ear and advised him to permit an incision of the drumhead to discharge the pus, but told him that though he would suffer pain in the meantime, it would probably rupture, but he would run the risk of more serious complications. The patient refused to submit to the puncturing and about May 25th the ear drum ruptured, the pus discharged and the pain disappeared. "He believed himself to be entirely cured, and, according to the evidence of the physician, the plaintiff then had no reason to think he had any disease" (page 696). On June 30th, 1908, the insured had a return of pain in his ear, the next morning went to a hospital, and on July 2nd, 1908, was operated on by Dr. Woods for mastoiditis. The opinion of this court in that case then went on to say: "It is said in 25 *Cyc.* 812, that 'answers as to diseases, injuries or physical conditions are not rendered untruthful by failure to disclose temporary derangements, ailments or injuries existing or pre-existing which do not affect the general health and are not serious in their nature.' If, therefore, the ear trouble from which the plaintiff suffered prior to making the application was, as he supposed, merely temporary and had entirely passed away, leaving his general health unimpaired, then the answer complained of was not untruthful within the meaning of the law. If, on the other hand, that trouble was serious and there was an infection which resulted in mastoiditis on the night of June 30th, 1908, that condition would avoid the policy because the answer contained in the application would be both false and material to the risk. If such falsity and materiality had been shown by clear and convincing proof it would have been the duty of the court to have directed a verdict for the defendant. Otherwise, these questions should have been submitted to the determination of the jury."

But the appellant says there is a very clear distinction be-

between that case and the one now before this court, because the consultations there were for a temporary trouble, whereas here the trouble was progressive. This may be true as a comparison of ailments or conditions, but the principle is the same. There the insured "had no reason to think he had any disease," but he did know he had consulted two physicians about it within a month and failed to disclose the fact. Here the applicant had arterio sclerosis and never knew it, but had consulted his physician perhaps a dozen times in two years for what the physician says were minor and not serious ailments, in no way related to the disease or condition of which the patient died. How, then, can we say as a matter of law that the appellant would have rejected the application, or have made a more careful investigation of the applicant's health and physical condition, when there is evidence in the record that the arterial condition of the insured was not referrable to the complaints or ailments of the omitted consultations? This is a controverted fact for determination by a jury. For other cases of failure to give information of illness, treatment, or consultation, which were held for the jury, see *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452; *Mutual Life Ins. Co. v. Rain,* 108 Md. 353; *Mutual Life Ins. Co. v. Robinson,* 115 Md. 408; *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17; *Penn Mutual Life Ins. Co. v. Mechanics' Saving Bank & Trust Co.,* 72 Fed. 413.

Because we are of the opinion that there is evidence that the ailments about which the applicant consulted his physician and failed to mention the consultations in his application for insurance were not of a serious or dangerous character, the question of their materiality to the risk was properly left to the jury, and the defendant's second and third prayers were, therefore, properly refused.

The plaintiff's prayers in this case were the plaintiff's second, third, and sixth prayers in the case of *Mutual Life Ins. Co. v. Robinson,* 115 Md. 408, where they were approved, the second and third as fairly submitting the issue as to whether the insured's statement that he was in "good

558

health" was material to the risk, and we think applicable to the facts in this case. The plaintiff's third prayer (sixth in the *Robinson* case) is a damage prayer, about which there is no contention. The appellant contends that it was error to grant the plaintiff's prayers because they "entirely eliminate the question of good faith," and that for this reason it was error to refuse the defendant's twelfth, thirteenth. fourteenth, fifteenth and sixteenth prayers, citing in support of its contention article 48A, section 87, of the Code, which, it says, "applies only to representations which not only are material to the risk, but are made in good faith". The same point was raised in *Mutual Life Ins. Co. v. Robinson, supra,* in which it was held that the question of bad faith, material representation, and falsity of the answer that he was in good health were necessarily involved in the inquiry as to whether he had Bright's disease at the date of the application or issuance of the policy, and that this appeared to be the sole question of fact involved in the trial, and that the only real issue involved in the case was fairly submitted to the jury. The court granted the defendant's twenty-second prayer, which was: "If the jury find any answer in the application attached to and forming part of the policies was untrue or incorrect, and that such untrue or incorrect answer was material to the risk, then, even if such incorrect answer was given in good faith the verdict must be for the defendant." The plaintiffs first prayer instructed the jury that she was entitled to recover if they found the undisputed facts therein recited, unless "they should further find" that Edward L. Held in his application for insurance made some misrepresentation or untrue statement, and that said misrepresentation or untrue statement (if any the jury shall find) was material to the risk". It appears to this court that the granted prayers of both plaintiff and defendant submitted to the jury the only question involved in this case, and that is, the truth, falsity, and materiality of the insured's answers to the questions contained in the application, and that they were questions of fact for the jury and not of law for the court. The defendant's rejected prayers (except the second

and third, which asked an instructed verdict) did no more than in other forms submit the same questions as the granted prayers, and were properly refused as repetition. The defendant's seventeenth, eighteenth, and nineteenth prayers, while improper as repetition of the facts submitted, were defective in that they instructed the jury as a matter of law that "the insured warranted the correctness of every statement made in his signed application for insurance," whereas the policies issued to him contained the provision that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

This court being of the opinion that the granted prayers fairly submitted the questions involved in this case, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*